IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| FLYING J INC., et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>TA OPERATING CORPORATION, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART & DENYING IN PART MOTION TO COMPEL**<br><br>Case No: 1:06-CV-30 TC<br><br>District Judge Tena Campbell<br><br>Magistrate Judge David Nuffer |

Defendant Pilot Travel Centers LLC ("Pilot Travel") has filed a motion to compel supplemental responses to its First Set of Interrogatories.[1]  On August 29, 2006, Pilot Travel served its First Set of Interrogatories on Plaintiffs.  On October 30, 2006, plaintiffs served their responses and objections on Pilot Travel.[2]  On December 1, 2006, counsel for Pilot Travel sent a letter to Plaintiffs' counsel noting what they considered to be numerous deficiencies in Plaintiffs' responses.[3]  Thereafter, the parties exchanged correspondence and held a telephone conference,

---

[1]Motion to Compel, docket no. 82, filed February 8, 2007.

[2]Memorandum in Support of Motion to Compel ("Supporting Memorandum") at iii, docket no. 83, filed February 8, 2007.  Copies of Pilot Travel's First Set of Interrogatories and plaintiffs' responses are attached to the Supporting Memorandum as Exhibits 1 and 2, respectively.

[3]Supporting Memorandum at iv; Letter from John Bogart to Jonathon Dibble and Gregory  Kerwin, dated December 1, 2006, attached to Supporting Memorandum as Exhibit 3.

but were unable to come to an agreement on the disputed discovery requests.[4]  For the reasons

discussed below, the court grants the motion to compel in part, and denies it in part.  The court

will discuss each disputed request in turn.

## DISCUSSION

**A.  Interrogatories 1, 2, & 3.**

Interrogatory no. 1 asks plaintiffs to describe in detail the basis for the allegation in

paragraph 48 of the complaint that there is a continuing horizontal group boycott.[5]  Plaintiffs

responded to this interrogatory in part by stating that the factual basis for the allegation is set

forth in paragraphs 1-60 of the complaint.[6]

Interrogatory no. 2 asks Plaintiffs to describe in detail the basis for the contention that

Pilot Travel has participated in the alleged boycott.[7]  Interrogatory no. 3 asks the same question

with regard to Pilot Corp.[8]  In response to Interrogatory no. 2, Plaintiffs incorporated by reference

their response to Interrogatory no. 1.  In addition, they stated:

> [T]here is direct evidence of Pilot Travel's participation in the group boycott with
> TA through the conversations between Mike Hinderliter (of TA) and Mark
> Hazelwood (of Pilot) documented in the email attached as Exhibit 5 to the

---

[4]Supporting Memorandum at iv; Letters attached to Supporting Memorandum as Exhibits 4 & 5; Plaintiffs' Response to Pilot Travel Center's Motion to Compel ("Plaintiffs' Response") at 1, 2 n.1, docket no. 90, filed February 23, 2007; Letters attached to Plaintiffs' Response as Exhibits A & B.

[5]Ex. 1 to Supporting Memorandum at 6.

[6]Ex. 2 to Supporting Memorandum at 7.

[7]Ex. 1 to Supporting Memorandum at 7.

[8]Ex. 1 to Supporting Memorandum at 7.

Complaint, as well as Pilot's actions with respect to Irving Oil in furtherance of the boycott after those conversations.[9]

In response to Interrogatory no. 3, Plaintiffs incorporated by reference their response to Interrogatory no. 2.  The response further stated:  "As detailed in Plaintiffs' briefing and exhibits in response to Pilot's motion to dismiss in this case, public records confirm that Mark Hazelwood has served as an executive for both Pilot Travel and Pilot Corp. during the time period relevant to Plaintiff's claims, as have other Pilot employees."[10]

Defendants contend that these responses are inadequate and that Plaintiffs should be required to provide a more detailed factual statement.  In response to the motion to compel, Plaintiffs state that they have not withheld any information, and in fact, have provided all currently known information in support of the identified contentions.  Plaintiffs state:  "Having provided all known information in response to the contention interrogatories, Plaintiffs cannot do any more."[11]

The court concludes that Plaintiffs should provide a more detailed statement of the facts supporting the allegations in the complaint.  "An interrogatory may properly inquire into a party's contentions in the case and the factual basis therefor."[12]  A defendant "must be allowed to require the accusing party to set forth, with particularity, what he is accused of doing, not doing, or

---

[9]Exhibit 2 to Supporting Memorandum at 8.

[10]Exhibit 2 to Supporting Memorandum at 9.

[11]Plaintiffs' Response at 2.

[12]*Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 684 (D. Colo. 1991).

both."[13]  Although it is true, as one court has observed, that the allegations in the complaint shed some light on the role defendants apparently played, a general reference to the allegations in the complaint is not a proper response to an interrogatory.[14]  Similarly, vague references to conversations between Mr. Hinderliter and Mr. Hazelwood and to Pilot's actions with respect to Irving Oil are not appropriate responses to the interrogatories.  If Plaintiffs do not have the "necessary information to make a full, fair and specific answer to an interrogatory, [they] should so state under oath."[15]  Accordingly, Plaintiffs are directed to supplement their responses to Interrogatories 1, 2, and 3.

**B.  Interrogatories 6 & 7.**

Interrogatories 6 and 7 ask the basis for the contention in Paragraph 69 of the complaint that Pilot Travel and Pilot Corp., respectively, possess market power.[16]  In response to Interrogatories 6 and 7, Plaintiffs repeated allegations in the complaint relating to the market shares of the so-called "boycotting firms," and their exclusive access to the Trendar POS System.[17]  They further stated that "Plaintiffs believe the combined market share of these two companies and possibly others, in the circumstances and context alleged in the Complaint, gives

---

[13]*Id.* at 689.

[14]*Id.* at 688 (stating that "all references in plaintiff's Interrogatory Responses to the *allegations* in the Complaint amount to nothing more than *claims* or *allegations* that the *allegations* are true.").

[15]*Id.* at 684 (quoting *Miller v. Doctor's Gen. Hosp.*, 76 F.R.D. 136, 140 (W.D. Okla. 1977)).

[16]Ex. 1 to Supporting Memorandum at 7.

[17]Ex. 2 to Supporting Memorandum at 10-12.

these boycotting firms 'market power' as defined in applicable antitrust law for purposes of their horizontal group boycott."[18]

Pilot Travel contends that this answer is insufficient.  It states that Interrogatories 6 and 7 "asked whether Pilot Travel or Pilot Corp. possesses market power, not whether some other persons or group possesses market power."[19]  Pilot Travel states that in the meet and confer process, Plaintiffs admitted that they do not contend that Pilot Travel and Pilot Corp. have market power, but they refused to provide supplemental responses indicating their position.[20]

In response to the motion to compel, Plaintiffs explain that "Paragraph 69 contends that the boycotting firms possess market power *collectively*, not that each individual boycotting firm possesses market power by itself."[21]  The court concludes that Plaintiffs' answers to Interrogatories 6 and 7 are sufficient to apprise Pilot Travel of Plaintiffs' contentions with regard to the issue of "market power."

## C.  Interrogatories 8 & 9.

Interrogatories 8 and 9 ask Plaintiffs to describe the basis for their contention in Paragraph 84 of the complaint that Pilot Travel and Pilot Corp. have interfered with Plaintiffs' economic relations other than through the alleged horizontal boycott.[22]  In answer to these

---

[18]*Id.* at 12.

[19]Pilot Travel's Reply Memorandum in Support of Motion to Compel Supplemental Answers to Interrogatories ("Reply") at 4, docket no. 98, filed March 8, 2007.

[20]Supporting Memorandum at viii.

[21]Plaintiffs' Response at 3; see Ex. 4 to Supporting Memorandum at 6-7.

[22]Supporting Memorandum at 4, Ex. 1 to Supporting Memorandum at 7-8.

interrogatories, Plaintiffs pointed out that the allegations in Paragraph 84 of their complaint refer to Defendant TA, not the Pilot defendants.  They state, however, that they believe that "evidence developed through discovery in this case will reveal instances in which Pilot has engaged in other acts intended to interfere with Plaintiffs' economic relations, besides the actions described in Paragraph 83 of the complaint, but they have not yet alleged such actions by Pilot."[23]

Pilot Travel asserts that Plaintiffs' responses to these interrogatories say both "yes and no, the paradigm of evasion."[24]  Pilot Travel asserts that it is entitled to know whether Plaintiffs contend that either Pilot Travel or Pilot Corp. interfered with Plaintiffs' economic relations, and if so, the factual basis for such contentions.[25]

In response to the motion to compel, Plaintiffs state that they "made clear in their responses that they have not alleged that Pilot has engaged in such 'other acts.'"[26]  However, they then repeat their response to the interrogatories that they believe evidence developed through discovery will reveal instances in which Pilot engaged in such "other acts," but they have not yet alleged such actions by Pilot.  Plaintiffs contend that this response is clear and direct.[27]

The court concludes that Plaintiffs should supplement their answers to Interrogatories 8 and 9 to state whether they contend that Pilot Travel or Pilot Corp. has interfered with their economic relations other than through the alleged horizontal boycott.  If so, Plaintiffs should

---

[23]Ex. 2 to Supporting Memorandum at 13.

[24]Reply at 4.

[25]Supporting Memorandum at 4.

[26]Plaintiffs' Response at 4.

[27]*Id.*

provide detailed factual statements supporting the contention.  If Plaintiffs have no facts supporting this contention, they should so state under oath.[28]

**D.  Interrogatories 10, 11, & 12.**

Interrogatories 10, 11, and 12 ask whether Plaintiffs contend that Plaintiffs TON Services, Inc. ("TON"), Transportation Alliance Bank, Inc. ("TAB"), or Flying J, Inc. are direct participants in the trucker fuel card market, and if so, the basis for each such contention.[29] Plaintiffs objected that the interrogatories are "vague as to the term 'direct participant.'"[30] Subject to the objection, Plaintiffs provided a brief description, as alleged in their complaint, of the general nature of the businesses engaged in by TON, TAB, and Flying J.[31]

Pilot Travel contends that the objection is unfounded for three reasons.  First, Pilot Travel asserts that Plaintiffs' failure to explain how the term is vague or how they understood the term constitutes a waiver of the objection.  Second, Pilot Travel contends that there is nothing vague about the term.  Pilot Travel notes that direct participation in the relevant market is a factor to be considered in determining standing.  It further points out that Plaintiffs have long involvement in antitrust cases, and are represented by experienced antitrust counsel, who may be presumed to understand the standing requirements for antitrust claims.  Finally, it states that during the meet and confer process, Plaintiffs conceded that they understood the term.[32]

---

[28]See *Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 136 F.R.D. at 684.

[29]Ex. 1 to Supporting Memorandum at 8.

[30]Ex 2. to Supporting memorandum at 13-15.

[31]*Id.*

[32]Supporting Memorandum at ix, 5-6.

In response to the motion to compel, Plaintiffs state that while objecting to their responses, counsel for Pilot Travel "declined to provide a definition of the term 'direct participant' as used in the interrogatories but clarified their belief that the term is 'well-defined in the law of the Tenth Circuit.'"[33]  In subsequent communications, they have "refused to provide a definition of the term or to identify the 'Tenth Circuit case law' purportedly supplying the definition."[34]  Plaintiffs contend that this refusal "is evidence of the fact that the term is susceptible of many interpretations and nuances and that [Pilot Travel's] insistence upon a response using the undefined term can be viewed as an effort to catch Plaintiffs in a legalistic trap."[35]

The court believes that Pilot Travel should provide a definition of the term or identify the case law supplying the definition.  If it does so, Plaintiffs will be required to supplement their responses to the interrogatories.

**E.  Interrogatory 13.**

Interrogatory 13 asks Plaintiffs to describe their alleged damages in detail.[36]  Plaintiffs declined to provide a response to this interrogatory.  Instead, they stated that they have not yet analyzed or calculated their damages.  They further stated that they will retain an expert to identify and quantify each category of damages.  Since initial expert reports are not due until May

---

[33]Plaintiffs' Response at 5 (quoting Letter, dated Dec. 1, 2006, from John Bogart to Jonathon Dibble & Gregory Kerwin at 4, attached as Ex. 3 to Supporting Memorandum.

[34]Plaintiffs' Response at 6.

[35]*Id.*

[36]Ex. 1 to Supporting Memorandum at 8.

30, 2008, Plaintiffs asserted that it is premature for them to disclose any analysis or computation of damages.[37]

In opposition to the motion to compel, Plaintiffs state that antitrust damages must be proven by a complex economic analysis which requires an expert.  They state that any opinion about damages that could be offered at this time by their non-expert representatives would be unsupported by expert analysis and calculation and might even be misleading as it might be inconsistent with the ultimate opinions offered by their antitrust expert.  Plaintiffs state that they have already agreed to produce the financial data and other information that their expert will use to conduct the analysis.  In Plaintiffs' view, Pilot Travel will have ample opportunity during expert discovery to evaluate the basis for their damages calculation and to attempt to refute those calculations with their own expert analysis.[38]

In response, Pilot Travel states that much of the information it now seeks should have been provided in initial disclosures.  Pilot Travel points out that Plaintiffs' expert report will not be served until long after the close of fact discovery.  Pilot Travel states:

> Until then, according to Plaintiffs, Pilot Travel should rely on its own guesses about what Plaintiffs might claim as damages, and hope for the best in framing discovery requests.  This is not the process contemplated by the Rules of Civil Procedure, and it is [a]n invitation to wasteful and contentious document and deposition discovery.[39]

---

[37]Ex. 2 to Supporting Memorandum at 15-16.

[38]Plaintiffs' Response at 8-9.

[39]Reply at 6.

Pilot Travel also note notes that "Plaintiffs have already *twice* calculated damages they think attributable to an alleged boycott of the TCH card" in litigation in other cases.[40]  Pilot Travel asserts that "[w]ith two expert reports already in their files, they should be in a position to say something substantive about their damage claims."[41]

The court agrees that Plaintiffs should provide a description of their damages so that Pilot Travel may frame its discovery requests in an efficient manner.  Accordingly, Plaintiffs will be required to answer this interrogatory.

**F.  Interrogatory 14.**

Interrogatory 14 is as follows:  "State whether you contend that point-of-sale systems comprise a relevant antitrust market in this case, and if so, describe in detail the claims you assert in that market."[42]  Plaintiffs objected to this interrogatory as "vague as to the term 'relevant antitrust market in this case.'"[43]  Subject to the objection, Plaintiffs answered the interrogatory as follows:  "Yes, as Plaintiffs understand the term 'relevant antitrust market in this case.'"[44]  In addition, Plaintiffs provided an explanation of the basis for this contention as outlined in the complaint.[45]  However, Plaintiffs did not describe any claims they assert in that market.

---

[40]*Id.* at 7.

[41]*Id.*

[42]Ex. 1 to Supporting Memorandum at 8.

[43]Ex. 2 to Supporting Memorandum at 16.

[44]*Id.*

[45]*Id.*

Pilot Travel argues that "Defendants are entitled to know what claim, if any, is asserted for that market.  If no claim is being asserted, Defendants are entitled to know that now so that further discovery and argument are not wasted on diversions."[46]  In their response to the motion to compel, Plaintiffs state in a footnote that "the Complaint does not assert 'claims in that market.'"[47]

As discussed, Plaintiffs have indicated in their response to Interrogatory 14 that they contend that point-of-sale systems constitute a relevant antitrust market.  Also, it seems clear from Plaintiffs' memorandum that they do not assert any claims in that market.  However, the answer to the interrogatory does not make this clear.  The court thus concludes that Plaintiffs should supplemental their response to Interrogatory 14 to state unequivocally whether they assert any claims in that market, and if so, to describe them in detail.

**G.  Failure to Differentiate Between Pilot Travel and Pilot Corp.**

Pilot Travel complains that Plaintiffs "generically refer to 'Pilot' without distinguishing between Pilot Travel and Pilot Corp."[48]  For example, Interrogatories 4 and 5 ask whether Plaintiffs contend that Pilot Travel and Pilot Corp., respectively, discuss and share information with horizontal competitors.  Plaintiffs responded by referring only to "Pilot" making it impossible for Pilot Travel to determine whether the response was directed at Pilot Travel, Pilot Corp. or both.[49]  During the meet and confer process, Plaintiffs explained that their answers

---

[46]Reply at 8.

[47]Plaintiffs' Response at 6 n.3.

[48]Supporting Memorandum at 8.

[49]*Id.*; see Ex. 2 to Supporting Memorandum at 9-10.

described actions by individuals, and Plaintiffs did not know whether those actions were taken on behalf of Pilot Travel, Pilot Corp., or someone else.  However, Plaintiffs refused to supplement their responses to provide this clarification even though the interrogatories related to specific companies.[50]  Plaintiffs have not addressed this issue in their response to the motion to compel.

The court concludes that Plaintiffs should supplement their responses to distinguish between the two entities as requested by the interrogatories.  Where the answer concerns actions by an individual, and Plaintiffs are not sure on which company's behalf the individual was acting, they should so state in their response.

## H.  Plaintiffs' Objections to the Instructions and Definitions

Pilot Travel asserts that Plaintiffs improperly objected to virtually every definition and instruction in its First Set of Interrogatories.  In particular, they complain about Plaintiffs' objections to (1) the term "describe in detail," (2) the temporal scope of the interrogatories, and (3) the definition of "you," "your," and "plaintiff."[51]

### 1.  Describe in Detail

Pilot Travel asserts that Plaintiffs' objection to this instruction is meritless because a party is required to describe in reasonable detail the factual basis for any contention when asked to do so in an interrogatory.[52]  Pilot Travel requests that the court order Plaintiffs to state the definition of "describe in detail" that they used in their interrogatory responses.[53]

---

[50]Supporting Memorandum at 8.

[51]*Id.* at 8-9.

[52]*Id.* at 9 (citing *Cont'l Ill.*, 136 F.R.D. at 684).

[53]See Pilot Travel's Proposed Order Granting Motion to Compel, attached to its Motion to Compel.

In response, Plaintiffs state that "they did attempt to honor a common sense view of that phrase by providing reasonable detail to explain the facts supporting their contentions."[54]  The court takes Plaintiffs at their word that they attempted to provide reasonable detail to explain the facts, as they are required to do,[55] and declines to enter an order requiring Plaintiffs to state a definition of the term at this time.

### 2.  Temporal Scope of Responses

The instructions for Pilot Travel's First Set of Interrogatories requested Plaintiffs to provide information beginning in 1996.[56]  Plaintiffs objected to the date "as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence."[57]  Pilot Travel asserts that this objection is "both surprising and bizarre," since Plaintiffs' complaint refers to events occurring as early as 1985, and appears to allege that the boycott began in 1996.[58]  Pilot Travel contends that Plaintiffs' objection should be overruled, and to the extent it is not overruled, Plaintiffs should be required to state the temporal scope of their answers.[59]

In response, Plaintiffs state that all parties in this case have sought at least some information dating back to 1996, and all parties including Pilot Travel have objected to this

---

[54]Plaintiffs' Response at 9.

[55]*See Cont'l Ill.*, 136 F.R.D. at 684.

[56]Ex. 1 to Supporting Memorandum at 5.

[57]Ex. 2 to Supporting Memorandum at 5.

[58]Supporting Memorandum at 9.

[59]*Id.* at 10.

temporal scope.  Plaintiffs also describe their efforts in trying to resolve this issue.[60]  Plaintiffs

concede that temporal scope "remains an important issue that will need to be clarified in the

context of document requests."[61]  They assert, however, that temporal scope is not relevant to

their interrogatory responses because they "provided information on their contentions concerning

certain subjects rather than an account of particular events occurring at certain dates in the

past."[62]

Plaintiffs' interrogatory responses do not deal with events occurring on specific dates.

Since Plaintiffs' interrogatory responses are the only discovery requests presently before the

court, the court concludes that it is not necessary at this time to enter an order setting the

temporal scope of discovery.  The court encourages the parties to reach an agreement on this

issue.

### 3.  Definition of "you," "your," and "plaintiff."

In their response to Pilot Travel's First Set of Interrogatories, Plaintiffs objected to Pilot

Travel's definition of "you," "your," and "plaintiff" in that it required Plaintiffs "to review and

provide information from their 'parent, subsidiaries, directors, officers, employees, agents and

attorneys . . . .'"[63]  Subsequently, in a December 11, 2006 letter, Plaintiffs stated that they would

adopt the definition used by Pilot Travel in its discovery responses.  Under this definition,

---

[60]Plaintiffs' Response at 9-10.

[61]*Id.* at 10.

[62]*Id.*

[63]Ex. 2 to Supporting Memorandum at 3.

Plaintiffs interpreted the terms as "the named Plaintiffs and their agents and employees acting within the scope of their employment or agency."[64]

   In support of its motion to compel, Pilot Travel states that any claim that plaintiffs have adopted a definition based on Pilot Travel's definition of a similar term is disingenuous because Pilot Travel served its responses more than a month after Plaintiffs served their responses.[65]  In response, Plaintiffs reaffirm that they already have adopted the definition suggested by Pilot Travel, and confirmed that the definition does not change their answers to Pilot Travel's interrogatories.[66]  The court concludes that Plaintiffs have made their definition of the terms sufficiently clear.


**ORDER**

   IT IS HEREBY ORDERED that Pilot Travel's Motion to compel[67] is GRANTED IN PART as follows:

   Plaintiffs shall provide supplemental responses to Pilot Travel's Interrogatory Nos. 1, 2, and 3 that include detailed statements of facts supporting the allegations of the Complaint that (a) there is a continuing horizontal boycott by TA, Pilot, and Petro Stopping Centers, LP of Flying J, the Trucker Fuel Card of Flying J's subsidiary TCH, and any other Trucker Fuel Card processed

---

[64]Letter dated December 11, 2006 from Michael Crimmins to John Bogart at 3, attached as Exhibit 4 to Supporting Memorandum.

[65]Supporting Memorandum at xi.

[66]Plaintiffs' Response at 9; Exhibit 4 at 3.

[67]Motion to Compel, docket no. 82, filed February 8, 2007.

by TCH; (b) that Pilot Travel has participated in or taken steps in furtherance of any alleged boycott of TCH; and (c) that Pilot Corporation has participated in or taken steps in furtherance of any alleged boycott of TCH.

Plaintiffs shall provide supplemental responses to Pilot Travel's Interrogatory Nos. 8 and 9 that state whether Plaintiffs contend that either Pilot Travel or Pilot Corporation have intentionally interfered with Plaintiffs' economic relations other than through the alleged horizontal boycott, that include detailed statements of facts supporting such contentions;

Plaintiffs shall provide a supplemental response to Pilot Travel's Interrogatory No. 13 that includes a detailed statement of any and all theories of damages, the elements of such damages, the amount of damages for each such element, and the method of calculation of such damages;

Plaintiffs' response to Interrogatory 14 indicates that they contend that point-of-sale systems constitute a relevant antitrust market.  Plaintiffs shall supplement their response to Interrogatory 14 to state whether they assert any claims in that antitrust market, and if so, to describe them in detail.

For all supplemental responses, including Interrogatories 4 and 5, Plaintiffs shall separately state answers with respect to Pilot Travel and Pilot Corporation, and to the extent Plaintiffs are unable to do so, Plaintiffs shall so state and provide a detailed explanation of why they are unable to do so.

The motion to compel is DENIED IN PART.  Specifically, the court denies the motion as to Interrogatory Nos. 6 and 7, and with regard to the instructions and definitions discussed in

Section H of this order.  Plaintiffs are not required to provide a supplemental response to Interrogatory Nos. 10, 11, and 12 at this time.  If Pilot Travel provides a definition of the term "direct participant," Plaintiffs will be required to supplement their responses.

This Order in no way relieves Plaintiffs of their duty to supplement their answers to discovery materials pursuant to Federal Rule of Civil Procedure 26(e).

May 2, 2007.

BY THE COURT:


s/David Nuffer

David Nuffer
U.S. Magistrate Judge