IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| FLYING J INC., et al.,<br>Plaintiffs,<br>vs.<br>TA OPERATING CORPORATION, et al.,<br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO COMPEL**<br>Case No: 1:06-CV-30 TC<br>District Judge Tena Campbell<br>Magistrate Judge David Nuffer |

Plaintiffs Flying J Inc., TCH LLC, Transportation Alliance Bank Inc., and TON Services Inc. have filed a motion to compel supplemental responses from Defendants Pilot Travel and Pilot Corp ("Pilot Defendants") to Plaintiffs' First Set of Interrogatories.[1] On October 17, 2006, Plaintiffs served their First Set of Interrogatories on the Pilot Defendants. On December 1, 2006, the Pilot Defendants served their responses and objections to the interrogatories.[2] On January 3, 2007, counsel for Plaintiffs sent a letter to counsel for the Pilot Defendants in an attempt to confer on the discovery issues raised by the Pilot Defendants in their responses and to identify

[1]Plaintiffs' Motion to Compel Interrogatory Responses by Pilot Travel and Pilot Corporation, docket no. 91, filed February 26, 2007.

[2]Plaintiffs' Memorandum in Support of Motion to Compel Interrogatory Responses by Pilot Travel and Pilot Corporation ("Supporting Memorandum") at 2, docket no. 92, filed February 26, 2007. Copies of Plaintiffs' First Set of Interrogatories and the responses by Pilot Travel and Pilot Corp. are attached to the Supporting Memorandum as Exhibits A and B, respectively.

and explain what Plaintiffs' counsel considered to be deficiencies in those responses.[3] Thereafter, the parties exchanged correspondence and held a telephone conference, but were unable to come to an agreement on the disputed discovery requests.[4] For the reasons discussed below, the court grants the motion to compel with certain modifications. The court will discuss each disputed request in turn.

**DISCUSSION**

Plaintiffs' interrogatories ask the Pilot Defendants to identify persons with knowledge of facts relevant to this lawsuit.[5] Such interrogatories are proper under the federal rules which provide that a party "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including . . . the identity and location of persons having knowledge of any discoverable matter."[6]

The Pilot Defendants objected to each interrogatory on the ground that "it is overly broad, unduly burdensome, vague and ambiguous, calls for information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence."[7] In response, Plaintiffs offered to narrow the scope of the interrogatories "by excluding Pilot employees at the

---

[3]Supporting Memorandum at 2; Letter from Katrina Lewis to John Bogart, dated January 3, 2007, attached to Supporting Memorandum as Exhibit C.

[4]Supporting Memorandum at 2-3; Letters attached to Supporting Memorandum as Exhibits D, E, & F.

[5]Supporting Memorandum at 1.

[6]Fed. R. Civ. P. 26(b)(1).

[7]See Ex. B to Supporting Memorandum at 3, 5, 6, 7.

level of truck stop manager or below, who work in one particular truck stop."[8] But the Pilot Defendants still would not provide what Plaintiffs consider to be adequate responses.[9] In opposition to the motion to compel, Pilot Travel and Pilot Corp. continue to object to the interrogatories on the ground that the scope of information they seek is too broad and would place too much of a burden on them. They complain that "Plaintiffs' expansive approach to discovery is not warranted, nor does it promise fruitful results."[10]

**A. Temporal Scope of the Interrogatories**

Plaintiffs seek information dating back to July 1, 1996.[11] In responding to the interrogatories, however, the Pilot Defendants stated, without explanation, that they would provide information only "for the period beginning September 1, 2005,"[12] a date just six months before the complaint was filed.

Plaintiffs state that because they recognize the need for all parties to this litigation to provide certain information dating back to January 1, 1996, they proposed a compromise in which all parties would provide information and documents beginning January 1, 2000. In addition, all parties would provide information and documents for the period January 1, 1996 through December 31, 1999 that pertain to subjects or events upon which a party intends to rely

---

[8]Supporting Memorandum at 7.

[9]*Id.*

[10]Opposition to Plaintiffs' Motion to Compel Supplemental Answers to Interrogatories ("Opposition") at 1, docket no. 102, filed March 16, 2007.

[11]See Ex. A to Supporting Memorandum at 4.

[12]Supporting Memorandum at 7; see Ex. B to Supporting Memorandum at 3, 5, 6, & 7.

in its claims or defenses. The Pilot Defendants rejected this proposal, but offered to supplement their responses dating back to January 1, 2002.[13] Plaintiffs assert that they need information prior to that date. They further state that the Pilot Defendants' position is inconsistent in that the Pilot Defendants seek information going back to January 1, 1996 in their own motion to compel,[14] but refuse to provide information for the same time period.

In opposition, the Pilot Defendants state that Plaintiffs already have obtained extensive information predating 2001 from third parties, as well as the Pilot Defendants, in separate litigation against Comdata. They state that given the fact that Plaintiffs already possess this pre-2001 information, their request for duplication of the discovery back to 1996 "highlights the facial overbreadth of their requests."[15] They further state that because they have not had the advantage of similar historical discovery, Plaintiffs' proposed compromise is "one-sided and too restrictive."[16]

In response, Plaintiffs state that discovery sought in the Comdata case was entirely different than the discovery it seeks in this case.[17] In addition, they state that they are in the

[13]Supporting Memorandum at 7-8; see ex. E to Supporting Memorandum at 1.

[14]Supporting Memorandum at 7; see Pilot Defendants' Memorandum in Support of Motion to Compel at 9, docket no. 83, filed February 8, 2007.

[15]Opposition at 2.

[16]*Id.* at 3 (quoting Supporting Memorandum at 8).

[17]Plaintiffs' Reply in Support of Motion to Compel Interrogatory Responses by Pilot Travel and Pilot Corporation ("Reply") at 3, docket no. 106, filed March 29, 2007.

process of identifying the information produced by the Pilot Defendants in the Comdata litigation, but the information is not extensive.[18]

In summary, Plaintiffs state that the parties still need to work out a reciprocal time frame for responses, and January 1, 2002 is not early enough.[19] Defendants contend that requiring them to provide information dating to January 1996 would impose an undue burden on them.[20]

As one court has observed, all discovery requests are a burden on the responding party. Unless the task of responding is unusual, undue or extraordinary, the general rule requires the party to bear that burden.[21] This court previously has urged the parties to work out an agreement on the temporal scope of discovery.[22] In the absence of such an agreement, and on the state of the record at this time, the court believes that Plaintiffs' proposal requiring the Pilot Defendants to provide information beginning January 1, 2000 is reasonable with regard to the disputed interrogatories. The court repeats its hope that the parties reach agreements on such issues.

**B. Description of Job Responsibilities of the Persons Sought by the Interrogatories.**

Plaintiffs' Definition no. 7 states that when referring to a person, "identify" means to give the person's full name, present or last known address, and the present or last known place of

[18]*Id.*

[19]*Id.*

[20]Opposition at 2.

[21]*Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 684-85 (D. Kan. 1991).

[22]Memorandum Decision and Order Granting in Part & Denying in Part Motion to Compel at 14, docket no. 112, filed May 2, 2007.

employment, including a job title or job description.[23] In addition, Interrogatories 1 and 2 ask the Pilot defendants to "describe the nature of [each identified employee's] responsibilities."[24] In their responses the Pilot Defendants identified a number of individuals. But in the meet and confer process, they have taken the position that they will only provide a description of work responsibilities for the identified employees where a written job description already exists.[25]

In support of their motion to compel, Plaintiffs state that they "are simply asking for a couple of sentences explaining each individual's job responsibilities in order to help determine deposition witness lists and topics."[26] In opposition, the Pilot Defendants state that Plaintiffs' assertion that they need the job descriptions to discover witnesses is merely a post hoc attempt to rewrite the discovery requests which "specifically call for 'a job title or description.'"[27] They state that they have provided the job titles for all of the individuals identified exactly as requested, and that the job titles provide adequate information about job responsibilities for Plaintiffs to conduct discovery.[28] They assert that Plaintiffs' request for descriptions of job responsibilities "appears to be little more than a perjury trap."[29] Finally, they argue that the

[23]Ex. A to Supporting Memorandum at 2.

[24]*Id.* at 4.

[25]Supporting Memorandum at 8.

[26]*Id.* at 8-9.

[27]Opposition at 3.

[28]*Id.*

[29]*Id.* at 3-4.

compilation of such information for the twenty-five individuals identified would require considerable effort and would do nothing to advance the case.[30]

Plaintiffs respond that job titles often do not effectively describe an employee's responsibilities. They point out that of the twenty-three individuals identified in response to Interrogatory no. 1, fourteen have the title of "sales manager" or "director of sales," and seven have the title of "account executive" or "account representative." They state that the additional information they seek would streamline the deposition process, and that the burden to provide the information is small.[31]

The court concludes that providing a couple of sentences to describe the identified employees' job responsibilities would not be an undue burden, and would greatly improve the efficiency of discovery. Therefore, the Pilot Defendants will be required to provide some description of job responsibilities.

**C. Interrogatories 1 & 2.**

Interrogatory no. 1 asks the Pilot Defendants to identify "all persons (including current and former Pilot employees) whose responsibilities with Pilot have concerned sales and service to carriers and trucking companies at any time since July 1, 1996, and [to] describe the nature of such responsibilities."[32] Interrogatory no. 2 asks for the same information with regard to

---

[30] *Id.* at 4.

[31] Reply at 4.

[32] Ex. A to Supporting Memorandum at 4.

employees whose responsibilities concern "any trucking fuel card processed over any platform, including the TCH and Comdata platforms."[33]

In addition to their general objections, the Pilot Defendants objected to Interrogatory 1 as "vague and ambiguous to the extent it refers to 'sales and service to carriers and trucking companies.'"[34] Based on this objection, they limited their response to "identifying persons whose primary responsibilities include or included marketing or negotiating contracts between Pilot Travel and trucking companies regarding use of an in-house or private label card."[35] The Pilot Defendants also objected to Interrogatory 2 as "vague and ambiguous to the extent it refers to 'the TCH and Comdata platforms.'"[36] They similarly limited their response to this interrogatory by "identifying persons whose primary responsibilities included negotiating or administering merchant agreements between Pilot Travel and any fleet, credit, billing card, or other payment mechanism used for diesel fuel sales."[37]

In support of their motion to compel, Plaintiffs state that the responses, as limited by the Pilot Defendants, are too narrow and would exclude employees with knowledge directly relevant to the litigation. For example, they would exclude employees who "deal with special pricing or loyalty programs (Interrogatory 1), and employees who make decisions whether to accept any fleet, credit, billing card, or other payment mechanism for diesel fuel purchases (Interrogatory

---

[33] *Id.*

[34] Ex. B at to Supporting Memorandum at 3.

[35] *Id.*

[36] *Id.* at 5.

[37] *Id.*

2)."[38] Plaintiffs have offered to reduce the scope of the interrogatories to exclude all employees at the level of truck stop manager and below, as well as those whose primary responsibilities do not include the activities described.[39]

In opposition, the Pilot Defendants complain that the interrogatories are overly broad and would include virtually every current and former employee. They further assert that Plaintiffs' offer to narrow the scope of the interrogatories does not cure the burden involved which is too great in light of the low likelihood of discovering relevant information beyond what the Pilot Defendants already have agreed to provide.[40]

The information sought by Plaintiffs is relevant to the case. Further, it should make the deposition process more efficient. Accordingly, the motion to compel a supplemental response to Interrogatories 1 and 2 will be granted with the limitation that the Pilot Defendants need only identify those employees above the level of truck stop manager who have significant responsibilities for the described activities.

**D. Interrogatory 3.**

Interrogatory no. 3 asks the Pilot Defendants to identify "all persons (including current and former Pilot employees) who have participated in any way in meetings of trade associations, industry organizations, membership or joint marketing groups, or networks (including, but not limited to, NATSO, WATSO, and/or ATA) on behalf of Pilot at any time since July 1, 1996, and

---

[38]Supporting Memorandum at 10.

[39]*Id.* at 9-10; Reply at 4-5.

[40]Opposition at 5.

describe the nature of such participation."[41] In response to this interrogatory, the Pilot Defendants stated that they would only identify "members of Pilot Travel's management whose duties include participation in or representation of Pilot Travel at trade associations, industry organizations, marketing groups or networks."[42]

In opposition to the motion to compel, the Pilot Defendants argue that "liability for violations of the antitrust laws can only be imposed on a corporation where the violation is carried out by an employee acting within the scope of his or her employment."[43] They contend that this interrogatory would require them to identify "every employee who ever had any connection whatever to any industry trade show or meeting," including those who set up booths, handed out marketing materials, or made travel arrangements.[44] They state: "Any information that could be provided by lower level employees would have no bearing on the liability of Pilot Travel or Pilot Corp. Such employees could not bind their employer to the conspiracy Plaintiffs have alleged."[45]

In response, Plaintiffs state that the Pilot Defendants have confused liability with discovery. They point out that "lower level employees can be conduits for information exchanged as part of a group boycott."[46] Plaintiffs have offered to exclude all employees at the

---

[41]Ex. A to Supporting Memorandum at 4.

[42]Ex. B to Supporting Memorandum at 5-6.

[43]Opposition at 6.

[44]*Id.* at 7.

[45]*Id.*

[46]Reply at 5-6.

level of truck stop manager or below, and include only persons who "actually participate in meetings," rather than secretaries and administrative personnel."[47]

The court agrees that employees' ability to bind their employer has no bearing on the issue of whether they might have information relevant to the alleged conspirators' use of trade shows or meetings to further the conspiracy. Accordingly, the Pilot Defendants will be required to give a complete response to Interrogatory no. 3. They need only identify employees who actually participate in such meetings, and may exclude administrative personnel and employees who work at individual truck stops at the level of truck stop manager or below.

**E. Interrogatories 5 and 6.**

Interrogatory no. 5 asks the Pilot Defendants to identify "all Pilot employees who had communications with TA or Petro and, for each person identified, describe the general nature of such communications."[48] Interrogatory no. 6 asks the same question with regard to communications with Comdata Corporation, including its employees and subsidiaries.[49] In response to these interrogatories, the Pilot Defendants stated that they would identify "members of management who may have had communications with [TA, Petro, or Comdata] on topics relevant to the allegations of the Complaint."[50] They then stated that "neither Pilot Travel nor

---

[47]Supporting Memorandum at 11 n.6; Reply at 7..

[48]Ex. A to Supporting Memorandum at 5.

[49]*Id.*

[50]Ex. B to Supporting Memorandum at 6-7.

Pilot Corp. is aware of any member of management who had any communication with [TA, Petro, or Comdata] on topics relevant to the allegations of the Complaint."[51]

In opposition to the motion to compel, the Pilot Defendants argue that "information relating to lower level employees (1) has no bearing on the antitrust liability of Pilot Travel or Pilot Corp. under the conspiracy alleged by Plaintiffs; and (2) would impose an enormous burden on Pilot Travel and Pilot Corp. by requiring interviews of virtually every employee."[52]

As previously discussed, Plaintiffs "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including . . . the identity and location of persons having knowledge of any discoverable matter."[53] The fact that a lower level employee does not have the authority to bind the defendants has no bearing on whether such an employee might have knowledge of discoverable information. Therefore, the Pilot Defendants' limitation of their responses to include only communications by members of management is not proper.

The Pilot Defendants also object to the interrogatories on the ground that they would impose an undue burden by requiring numerous interviews of little value.[54] They state that the interrogatories would require descriptions of conversations on any subject whatsoever, "including pleasantries exchanged when purchasing fuel during a family road trip . . . and innumerable other conversations which have nothing to do with Plaintiffs' Complaint or the

---

[51]*Id.* at 7.

[52]Opposition at 8.

[53]Fed. R. Civ. P. 26(b)(1).

[54]Opposition at 9.

antitrust laws."[55] Consequently, the Pilot Defendants limited their responses to include only communications that they deemed relevant to the allegations in the complaint. While this approach seems reasonable, the court notes that the Pilot Defendants stated that they were unaware of any such communications. As Plaintiffs point out, however, the communications between Michael Hinderliter (TA) and Mark Hazelwood (Pilot) referred to in the Hinderliter e-mail appear to be responsive to Interrogatory 5.[56]

Similarly, the Pilot Defendants stated in response to Interrogatory 6 that they were not "aware of any member of management who had any communication with Comdata Corporation on topics relevant to the allegations of the Complaint."[57] Plaintiffs allege in their complaint that Comdata has entered into agreements with defendants which give them favorable pricing on transaction fees as a reward for refusing to accept the TCH fuel card.[58] Although the Pilot Defendants, in opposition to the motion to compel, narrowly read the complaint as merely describing Comdata's contracting practices,[59] their interpretation appears strained. As Plaintiffs contend, it appears that the Pilot Defendants must have had communications with Comdata about its transaction fees, but do not deem such communications to be relevant to the allegations of the complaint.

---

[55]*Id.* at 8-9.

[56]Supporting Memorandum at 12; Hinderliter e-mail attached to Supporting Memorandum as Ex. G; Reply at 9-10. The court notes that by limiting the temporal scope of their response to the period beginning September 1, 2005, the Pilot Defendants chose a date that permitted them to exclude the Hinderliter e-mail from their response.

[57]*Id.*

[58]See Complaint ¶ 40, docket no. 1, filed February 27, 2006.

[59]Opposition at 10.

Information responsive to these interrogatories appears to be relevant, and reasonably likely to lead to the discovery of admissible evidence. Accordingly, the court will require the Pilot Defendants to fully respond to Interrogatories 5 and 6.

**ORDER**

IT IS HEREBY ORDERED that Plaintiffs' Motion to Compel Interrogatory Responses by Pilot Travel and Pilot Corporation[60] is GRANTED with the following modifications:

Defendants Pilot Travel and Pilot Corp. shall provide full and complete responses to Plaintiffs' Interrogatories 1, 2, 3, 5, and 6. In identifying persons responsive to the interrogatories, Defendants may exclude all employees at the level of truck stop manager or below. With regard to Interrogatories, 1 and 2, Defendants may also exclude those employees whose primary responsibilities do not include the activities described. For Interrogatory 3, Defendants need only identify those employees who actually participate in the types of meetings described. Finally, unless the parties reach a contrary agreement on the temporal scope of discovery, Defendants need only provide information beginning January 1, 2000. The responses are due August 24, 2007.

This Order in no way relieves Pilot Travel and Pilot Corporation of their duty to supplement their answers to discovery materials pursuant to Federal Rule of Civil Procedure 26(e).

July 30, 2007.

BY THE COURT:

David Nuffer
U.S. Magistrate Judge

[60]Docket no. 91, filed February 26, 2007.