IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| FLYING J INC., et al., | **MEMORANDUM DECISION AND ORDER GRANTING IN PART MOTION TO COMPEL** |
| Plaintiffs, | |
| vs. | |
| TA OPERATING CORPORATION, et al., | Case No:  1:06-CV-30 TC |
| Defendants. | District Judge Tena Campbell |
| | Magistrate Judge David Nuffer |

Defendant Pilot Travel Centers LLC ("Pilot Travel") has filed a motion to compel[1]

supplemental responses to Pilot Travel's First Set of Requests for Production of Documents to

TCH LLC ("First Set").  For the reasons discussed below, the court grants the motion to compel

with certain modifications.  The court will discuss each disputed request in turn.

## BACKGROUND

On August 29, 2006, Pilot Travel served its First Set on TCH.  On October 30, 2006,

TCH served its responses and objections on Pilot Travel.[2]  On December 4, 2006, counsel for

Pilot Travel sent a letter to counsel for TCH highlighting what counsel considered to be

---

[1]Motion to Compel, docket no. 96, filed March 1, 2007.  Pilot Travel also seeks to compel responses to document requests served on Plaintiffs Flying J Inc., Transportation Alliance Bank Inc., and TON Services, Inc. ("other plaintiffs"), to the extent that those requests and objections are substantially similar to those Pilot Travel is moving to compel with respect to TCH.  (Motion to Compel at 2, n.1.)  Consequently, in some cases, the court refers to "Plaintiffs" as well as TCH.

[2]Pilot Travel's Memorandum in Support of Motion to Compel ("Supporting Memorandum") at iv-v, docket no. 97, filed March 1, 2007.  Copies of Pilot Travel's requests and TCH's responses are attached to the Supporting Memorandum as Exhibits 2 and 3, respectively.

deficiencies in those responses and objections.[3]  Counsel for TCH responded by letter on

December 22, 2006.[4]  However, the parties were unable to come to an agreement on the disputed

discovery requests.

On January 23, 2007, the court entered a protective order regarding the protection of

confidential material produced during discovery.[5]

## DISCUSSION

### A.  Failure to Meet and Confer.

Counsel for Pilot Travel submitted a Certificate of Meet and Confer in which he stated

that on December 15, 2006, he conferred in good faith via telephone with Plaintiffs' counsel in

an effort to resolve the issues that are the subject of this motion to compel.[6]  In opposition to the

motion, Plaintiffs point out that the December 15, 2006 conference was limited to interrogatory

responses only, and the subject of the instant motion was not discussed.  Plaintiffs argue that

because Pilot Travel did not comply with its obligation under Fed. R. Civ. P. 37(a)(2)(B) to meet

and confer, the motion to compel should be denied on that basis alone.[7]

---

[3]Supporting Memorandum at v; Letter from John Bogart to Jonathon Dibble, dated December 4, 2006, attached to Supporting Memorandum as Exhibit 4.

[4]Supporting Memorandum at v; Letter from Michael Crimmins to John Bogart, dated December 22, 2006, attached as Ex. 5 to Supporting Memorandum.

[5]Protective Order, docket no. 81, filed January 23, 2007.

[6]Motion to Compel at 3.

[7]Plaintiffs' Memorandum in Opposition to Pilot Travel Center's Second Motion to Compel ("Opposition") at 1-2, docket no. 101, filed March 16, 2007.

In response, Pilot Travel acknowledges that it mistakenly referred to a December 15, 2006 telephone conference in its certification.  It has apologized to the court and Plaintiffs for any confusion that the inadvertent reference may have caused.[8]  Pilot Travel states, however, that it fulfilled its obligation to confer with Plaintiffs prior to filing the motion to compel by sending the December 4, 2006 letter to TCH, as well as three similar letters to the other plaintiffs.[9]  Pilot Travel states that after receiving TCH's December 22, 2006 letter in which it stood by its original objections and refused to produce the documents, further communication on the requests would have been futile.[10]

While the court believes that it would have been preferable for the parties to have met and conferred prior to the filing of the motion, the court acknowledges that the parties made an effort to resolve the dispute without involving the court.  Accordingly, the court will not deny the motion on the basis that Pilot Travel failed to fulfil its obligation to meet and confer.

**B.  Scope of Discovery Rules.**

Rule 26 provides that a party "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."[11]  Rule 34, pertaining to the production of documents, is similarly broad in scope.[12]

---

[8]Reply Memorandum in Support of Pilot Travel Centers LLC's Motion to Compel ("Reply") at 2 n.12, docket no. 107, filed March 30, 2007.

[9]*Id.* at 2.  Copies of the letters sent to the other plaintiffs on December 6, 2006 are attached to the Reply as Ex. 4-6.

[10]Reply at 2 & n.12 (citing *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 356 (N.D. Ill. 2005))(stating that the doctrine of futility is applicable in the context of Rule 37.).

[11]Fed. R. Civ. P. 26(b)(1).

[12]8A Charles Alan Wright, et al. *Federal Practice and Procedure* § 2206 (2d ed. 1994).

**C.  Sufficiency of TCH's Objections.**

Pilot Travel asserts that in response to each request for production, TCH raised some combination of what are described by Pilot Travel as "standard boilerplate objections," such as "overly broad," "unduly burdensome," "vague," "ambiguous," and "not reasonably calculated to lead to the discovery of admissible evidence," without setting forth the basis for the objections or providing specific detail in support of them.[13]  Pilot Travel argues that TCH's failure to set forth the reasons for its boilerplate objections constitutes a waiver of those objections as a matter of law.[14]

The party resisting discovery has the burden "to clarify and explain precisely why its objections are proper given the broad and liberal construction of the discovery rules."[15]  The party "cannot make conclusory allegations that a request is irrelevant, immaterial, unduly burdensome, or overly broad.  Instead, the party resisting discovery must show specifically how each discovery request is irrelevant, immaterial, unduly burdensome or overly broad."[16]  Courts have stated that "pat, generic non-specific objections, intoning the same boilerplate language, are inconsistent with both the letter and the spirit of the Federal Rules of Civil Procedure."[17]  "An objection to a

---

[13]Supporting Memorandum at 1.

[14]*Id.* at 1-3 (citing *In re Aircrash Disaster Near Roselawn, Ind.*, 172 F.R.D. 295, 306-07 (N.D. Ill. 1997)).

[15]*Obiajulu v. City of Rochester*, 166 F.R.D. 293, 295 (W.D.N.Y. 1996).

[16]*Id.* (quoting *Gheesling v. Chater*, 162 F.R.D. 649, 650 (D. Kan. 1995)).

[17]*Obiajulu*, 166 F.R.D. at 295; *accord In re Aircrash Disaster Near Roselawn, Ind*, 172 F.R.D. at 306-07.

document request must clearly set forth the specifics of the objection and how that objection relates to the documents being demanded."[18]

As Pilot Travel argues, TCH has failed to provide detailed support for many of its objections. Although the court declines to make a blanket finding that TCH has waived its objections, the court reminds all parties of their obligation under the rules to make specific objections to discovery requests.[19]

**D.  Request 1.**

Request 1 asks for all documents "relied on, referred to, or evidencing the basis for each response to Pilot Travel's First Set of Interrogatories."[20]  TCH objected to Request no. 1 "because it is vague, overbroad and fails to describe with reasonable particularity the documents sought by [Pilot Travel]."[21]  Subject to the objection, TCH agreed to produce only those documents that were "specifically referenced in TCH's answers" to Pilot Travel's First Set of Interrogatories.[22]

In opposition to the motion to compel, TCH states that it objected to providing additional documents "on the basis of the attorney work product doctrine and the attorney-client

---

[18]*Obiajulu*, 166 F.R.D. at 295.

[19]See *Id.* (cautioning that "continued failure to follow the Federal Rules of Civil Procedure with respect to making specific objections do discovery demands may result in unwanted consequences.").

[20]Ex. 2 to Supporting Memorandum at 5.

[21]Ex. 3 to Supporting Memorandum at 6.

[22]*Id.*

privilege."[23]  The court notes that TCH did not raise this objection in its response to Request 1, although it was raised in counsel's letter of December 22, 2006.[24]

As Pilot Travel argues, "a claim of privilege must be established on a document by document basis."[25]  "The mere naked claim of privilege . . . does not justify a refusal to identify or produce the information and documents requested."[26]  Rule 26 requires a party withholding documents on a claim that it is privileged, or protected as trial-preparation material, to "describe the nature of the documents . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."[27]

TCH has not provided a privilege log or any other basis for determining the applicability of the attorney-client privilege or the work-product doctrine.  Accordingly, TCH will be required to provide a privilege log describing the documents which it claims are protected.  The log must be sufficient to enable Pilot Travel to assess the applicability of the claim of privilege or protection.

**E.  Requests 4 & 5.**

Plaintiffs allege in their complaint that Pilot Travel intentionally interfered with their "contractual relations and potential economic relations with truck drivers and trucking

---

[23]Opposition at 3.

[24]Ex. 5 to Supporting Memorandum at 4.

[25]*In re Air Crash Disaster at Sioux City, Iowa*, 133 FRD 515, 518 (N.D. Ill. 1990).

[26]*In re Aircrash Disaster Near Roselawn, Ind.*, 172 F.R.D. at 307.

[27]Fed. R. Civ. P. 26(b)(5)(A).

companies."[28]  Requests 4 and 5 ask TCH to produce copies of each contract with which it

contends Pilot Travel interfered, and a list of potential economic relations with which it claims

interference.[29]

TCH produced no documents in response to these requests.[30]  Instead, TCH interposed its

standard objection that each request is "vague, overbroad, unduly burdensome, and fails to

describe with reasonable particularity the documents sought."[31]  In addition, TCH stated that the

information sought "is proprietary and confidential" and "will be produced only upon entry of a

mutually acceptable stipulated protective order."[32]

With regard to Request 4, TCH asserted:

The request potentially covers every contract between TCH and its customers.
For example, Defendants' interference potentially affected the frequency of use of
the TCH card by all existing TCH customers and the decisions by those customers
whether to keep those TCH cards.  Yet Defendants do not need to review TCH's
contracts with every one of its customers to evaluate or challenge Plaintiffs'
claims in this lawsuit.[33]

---

[28]Complaint ¶ 83.

[29]Ex. 2 to Supporting Memorandum at 5.

[30]Supporting Memorandum at 4.

[31]Ex. 3 to Supporting Memorandum at 8, 9.

[32]*Id.* at 8, 9.

[33]*Id.* at 8.

In addition, TCH stated that Request 5 "is effectively an interrogatory asking TCH to prepare a list of every potential customer that might have purchased services from TCH absent the Defendants' actions."[34]

In opposition to the motion to compel, Plaintiffs state that Flying J, TON, and TAB explained in their responses that

> [They engage] in sales of goods and services (a type of contractual relationship) to a very large number of customers each year and Pilot does not need to ascertain the identity of those customers or review documentation concerning the sale in order to evaluate Plaintiffs' tortious interference claim against Pilot.  It is also not possible for [Flying J, TON, and TAB] to know the identity of all potential customers who would have purchased goods or services [from them], or done so more frequently, absent Defendants' unlawful conduct.[35]

Plaintiffs further state that despite their "well-founded objections," they agreed in their responses "to discuss the production of documents in response to appropriate, narrowed requests," but Pilot Travel "made no attempt to mitigate the burden of these requests."[36]

As Pilot Travel argues, Plaintiffs' complaint specifically raises claims of interference with contractual and economic relations, thus making contracts and economic relations direct issues in this litigation.[37]  Regarding TCH's contention that these requests are extremely burdensome because they seek copies of its contracts with every one of its customers, and a list of every potential customer, Pilot Travel points out that it is only asking for those contracts and

---

[34]*Id*. at 9.

[35]Opposition at 4 (alterations in original).

[36]*Id*.

[37]Supporting Memorandum at 5.

customer lists with which TCH claims interference.[38]  Accordingly, TCH will be required to produce documents in response to Requests 4 and 5.

**F.  Requests 6, 20-23**.

Requests 6 and 20-23 ask for documents evidencing damages, and various financial documents.  Pilot Travel states that "TCH largely refused the requests, only agreeing to produce formal financial statements."[39]

**1.  Request 6.**

Request no. 6 asks for all documents "evidencing any damages you claim, itemized by cause of action and causation as alleged in your Complaint."[40]  Plaintiffs offered their standard objections to this request including that "it is vague, overbroad, unduly burdensome, and fails to describe with reasonable particularity the documents sought."[41]  In addition, they alleged that the information sought "is proprietary and confidential to Plaintiffs including TCH because it potentially calls for all of TCH's financial information."[42]  TCH also claimed that the request is "unduly burdensome because it requires TCH to sort the documents by 'cause of action and causation.'"[43]  TCH also stated that the request "seeks information protected by the work product

---

[38]Reply at 4.

[39]Supporting Memorandum at 6; Ex. 2 to Supporting Memorandum at 5, 6-7.

[40]Ex. 2 to Supporting Memorandum at 5.

[41]Ex. 3 to Supporting Memorandum at 9.

[42]*Id.*

[43]*Id.* at 9-10.

doctrine."[44]  Finally, TCH objected to the request on the ground that it is premature because the report from Plaintiffs' damages expert is not due until May 30, 2008.[45]

In opposition to the motion to compel, Plaintiffs state that, among other reasons, they objected to this request because, as drafted, it potentially calls for all of their financial information.  They further state that their objection to this request is similar to their objection to Pilot Travel's Interrogatory 13.  Plaintiffs have not yet retained an antitrust expert to analyze and calculate their damages.  They believe that discovery of lay opinions of estimated damages would be useless or even misleading.  Plaintiffs state, however, that they have agreed to produce documents that their expert will use to conduct an analysis of damages.[46]

As the court noted in ruling on Plaintiffs' objection to Interrogatory 13, Plaintiffs' expert report will not be due until long after the close of fact discovery.  The court therefore required Plaintiffs to answer the interrogatory so that discovery might proceed in an efficient manner.[47]  For the same reasons, Plaintiffs will be required to produce the requested financial documents.  If Plaintiffs still contend that some of the information is protected from disclosure by the work product doctrine, they should provide a log of the documents that they claim are protected.

### 2.  Requests 20, 22, & 23.

Requests 20, 22, and 23, ask for "financial statements, reports, and management analyses of finances for each year since 1996;" "[a]ll financial documents, including without limitation,

---

[44]*Id.* at 10.

[45]*Id.*

[46]Opposition at 4-5.

[47]Memorandum Decision and Order at 8-10, docket no. 112, filed May 2, 2007.

reports and memos given by you or on your behalf to any third party for each year since 1996;" and a copy of "each loan, debt, or other financing document since 1996."[48]  After raising several of its standard objections, TCH agreed to produce only its annual financial statements for each year since 1996.  It stated, however, that counsel was willing to meet and confer to discuss possible production of additional redacted information that is narrowly tailored and reasonably related to the disputed issues.[49]

The court finds that the financial statements, reports and analyses, and financial information given to third parties are relevant to the issues in this case.[50]  The court is not persuaded that loan documents are relevant.  Accordingly, Plaintiffs will be required to produce documents responsive to Requests 20, 22, and 23 excepting loan documents.  The court notes that to the extent Plaintiffs feel the information is confidential, they may invoke the procedures available under the protective order in this case.[51]

### 3.  Request 21.

Request 21 asks Plaintiffs to provide a list of the members of TCH LLC since 1996.[52]  TCH responded that it would produce "documents kept in the ordinary course of its business that

---

[48]Ex. 2 to Supporting Memorandum at 6-7.

[49]Ex. 3 to Supporting Memorandum at 17-18.

[50]*See Caride v. Kohll*, No. Civ-04-1367-L, 2005 WL 1860295, at *3 (W.D. Okla. Aug. 3, 2005)(allowing discovery of plaintiffs' banking information so that defendants could evaluate and defend against plaintiffs' claims for damages); *In re Folding Carton Antitrust Litig.*, 76 F,R D. 420, 430-31 (D. Ill. 1977)(requiring plaintiffs to produce financial information as it may be relevant to issue of damages) .

[51]See Protective Order, docket no. 81, filed January 23, 2007.

[52]Ex. 2 to Supporting Memorandum at 6.

are sufficient to disclose the identity of the members of TCH LLC since TCH LLC was first organized in 1998."[53]  This appears to be a sufficient response, and neither party has specifically addressed this request in its briefing.  Accordingly, TCH will not be required to produce additional documents in response to Request 21.

**G.  Requests 7 & 8.**

Request 7 asks for a list of "all truck stops or travel centers or other commercial entities that accept and process the TCH card as payment in proprietary transactions for each year beginning in 1996."[54]  Request 8 asks for all documents "evidencing your non-transactional communications with entities that accept the TCH card as payment in proprietary transactions."[55]

TCH produced no documents in response to Requests 7 and 8.[56]  TCH objected to the requests on the ground that they are vague and ambiguous, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, and seek proprietary, confidential information.[57]  In particular, it stated that Request 7 is "unduly burdensome to the extent it requires TCH to reconstruct information dating back to 1996 about truck stops that accepted its card or to categorize the documents by 'each year.'"[58]  Subject to its objections, TCH directed Pilot Travel to TCH's website for the current list of truck stops that accept the TCH

---

[53]Ex. 3 to Supporting Memorandum at 18.

[54]Ex. 2 to Supporting Memorandum at 5.

[55]*Id.*

[56]Supporting Memorandum at 7.

[57]Ex. 3 to Supporting Memorandum at 10-11.

[58]*Id.* at 10.

card.[59]  In response to Request 8, TCH raised an additional objection that the term "'non-transactional communications' is vague and, as drafted, calls for privileged and confidential communications."[60]

Requests 7 and 8 call for information that is clearly relevant to the issues in this lawsuit. Although TCH indicates that some of the requested information might be available on its website, that fact does not excuse TCH from producing the documents.  Several courts have held that it is "not usually a ground for objection that the information is equally available to the interrogator or is a matter of public record."[61]  Further, TCH has failed to comply with the requirements of Rule 26(b)(5)(A) to support its claim that some of the documents are privileged. Accordingly, TCH will be required to produce documents in response to Requests 7 and 8. However, TCH may provide a privilege log to support its claim that some of the documents are privileged.

## H.  Requests 13 and 14.

Requests 13 and 14 seek all documents evidencing communications of TCH and its agents with the Federal Trade Commission.[62]  In response, TCH raised its standard objection that these requests are vague, ambiguous, overbroad, and not reasonably calculated to lead to the discovery of admissible evidence.  In addition, TCH claimed that the requests seek documents

---

[59]*Id*. at 10-11.

[60]*Id*. at 11.

[61]*City  Consumer Servs., Inc., v. Horne*, 100 F.R.D. 740, 747 (D. Utah 1983); *accord St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*,  198 F.R.D. 508, 514 (N.D. Iowa. 2000); 8 Charles Alan Wright, et al., *Federal Practice and Procedure* § 2014 (2d ed. 1994).

[62]Ex. 2 to Supporting Memorandum at 6.

that are protected from disclosure by the attorney-client privilege and work-product doctrine.
TCH nevertheless agreed to produce two subsets of documents after entry of the protective
order.[63]

In opposition to the motion to compel, TCH contends that it would be unduly
burdensome for it to locate documents concerning any contact with the FTC, since it does not
keep a central file concerning contacts with the FTC.  TCH further states that Plaintiffs recall
only one communication with the FTC relating to the issues in this lawsuit other than the
documents described in Plaintiffs' response.  It states that Plaintiffs will produce non-privileged
documents relating to that call from the FTC.[64]

The party resisting discovery has the burden to show that producing the material will be
unduly burdensome.  The court concludes that TCH has not met this burden.  As one court has
observed, "Rule 26(c) speaks of 'undue burden or expense' and discovery should be allowed
unless the hardship is unreasonable in the light of the benefits to be secured from the
discovery."[65]

As Pilot Travel argues, Plaintiffs' complaint referred to communications with, and
actions taken by, the FTC,[66] thus making those communications subject to discovery.[67]  TCH's

---

[63]Ex. 3 to Supporting Memorandum at 13-14.

[64]Opposition at 6.

[65] *Snowden ex rel. Victor v. Connaught Labs., Inc.*, 137 F.R.D. 325, 333 (D. Kan. 1991)(quoting 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2214 (1970).

[66]Complaint ¶¶ 27, 33-34, 36, 46-47.

[67]Supporting Memorandum at 8.

assertion that it does not keep a central file for FTC communications is unavailing.  "The fact that an unwieldy record keeping system would require heavy expenditures of time and effort to produce requested documents, is not a sufficient reason to prevent disclosure of otherwise discoverable material."[68]

While TCH contends that some of the documents are protected by the attorney-client privilege or the work-product doctrine, it has failed to comply with Rule 26(b)(5)(A).  "The party seeking to assert the attorney-client privilege or the work product doctrine as a bar to discovery has the burden of establishing that either or both is applicable."[69]  Further, as Pilot Travel points out, the material sought,  as communications with third parties, is discoverable.[70]  Accordingly, Plaintiffs will be required to produce documents responsive to Requests 13 and 14.  As with other requests, TCH may provide a privilege log supporting its claim of privilege for the documents it believes are protected.

**I.  Requests 15 and 16.**

Requests 15 and 16 ask for all documents evidencing communications with, or regarding, Comdata Corporation.[71]  TCH did not produce any documents in response to these requests, instead raising many of their standard objections including that the requests are vague and ambiguous, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.   In addition, TCH asserted that the requests seek documents

---

[68]*Snowden*, 137 F.R.D. at 333.

[69]*Barclaysamerican Corp. v. Kane*, 746 F.2d 653, 656 (10th Cir. 1984).

[70]Supporting Memorandum at 8.

[71]Ex. 2 to Supporting Memorandum at 6.

protected by the attorney-client privilege and the work product doctrine.[72]  TCH also noted that

Pilot Travel's counsel, John Bogart, represents Comdata in another lawsuit involving some of the

plaintiffs in this case.  TCH states that Mr. Bogart had access to, or is personally familiar with,

the communications between TCH and Comdata relating to that lawsuit.[73]

In light of Plaintiffs' allegations concerning Comdata's involvement in the alleged

antitrust conspiracy,  communications with, and about, Comdata are clearly relevant.  To the

extent that Plaintiffs claim the documents are privileged, they should prepare a privilege log.

Documents not protected should be produced.

**J.  Request 18.**

Request 18 seeks "[a] copy of each complaint, amended or otherwise, in all litigation to

which you are or have been a party since 1996."[74]  TCH produced no documents in response to

this request.  In addition to its standard objections, TCH stated that "[t]he entirety of litigation to

which any of Plaintiffs including TCH has been a party (e.g., collection, employment, slip-and-

fall) has no relevance to this case and cannot lead to the discovery of admissible evidence."[75]

Subject to the objections, TCH stated that the only lawsuit to which Plaintiffs have been a party

since 1996 in which any of them asserted claims under the Sherman Act or Clayton Act was the

---

[72]Ex. 3 to Supporting Memorandum at 14-15.

[73]*Id.* at 14.

[74]Ex. 2 to Supporting Memorandum at 6.

[75]Ex. 3 to Supporting Memorandum at 16.

Comdata lawsuit.  TCH further stated that the complaint is a matter of public record, and is also

available to Pilot Travel's Counsel since his law firm represented Comdata in the lawsuit.[76]

In support of the motion to compel, Pilot Travel argues that production of the complaints

would not be unduly burdensome since TCH's legal department likely maintains copies of the

relevant documents in electronic format.  It states that there is "no suggestion that TCH is so

litigious that the number of complaints is particularly voluminous."[77]  As an example of the

complaints' relevance, Pilot Travel states that Plaintiffs raised the same objections in the

Comdata case.  The court in that case compelled production.  The subsequent documents

"showed that plaintiffs had asserted claims against various defendants in unrelated actions for

store losses they sought to assign against Comdata, from copyright infringement to unfair

business practices."[78]  Pilot Travel argues that the complaints are therefore relevant to the claims

and defenses in this litigation.  Pilot Travel asserts that it should be allowed to discover whether

TCH seeks compensation from Pilot Travel for damages sought by TCH in other actions.[79]

In response to the motion to compel, Plaintiffs state that they have agreed to produce the

complaint and the amended complaint in the Comdata lawsuit.  They also reiterate that the

Comdata litigation is the only antitrust lawsuit since 1996 in which they have been a party.[80]

---

[76]*Id.*

[77]Supporting Memorandum at 12.

[78]*Id.* at 12-13.

[79]Reply at 7.

[80]Opposition  at 7.

Although the court accepts Plaintiffs' representation that they have not been parties in other antitrust litigation, the court believes that other complaints in which TCH was a plaintiff or asserted an affirmative claim for relief may be relevant for the reasons cited by Pilot Travel. Further, the court believes that it would not be unduly burdensome to produce the documents. Accordingly, Plaintiffs will be required to produce additional documents in response to Request 18.

**K.  Request 24**.

Request 24 seeks all documents "evidencing communications regarding any allegation in the Complaint."[81]  Plaintiffs produced no documents in response to this request, objecting that it is vague, ambiguous, overbroad, unduly burdensome, and does not describe the documents sought with reasonable particularity.  TCH states, for example, that the complaint contains allegations concerning "the existence and scope of entire markets relevant to Plaintiffs' claims and the request purports to cover 'communications' relating to any of those markets."[82]  Plaintiffs also objected to this request on the ground that it seeks proprietary and confidential information, as well as communications protected by the work product doctrine and the attorney-client privilege.[83]

The court concludes that TCH has not carried its burden to show that this request is unduly burdensome.  As Pilot Travel argues, communications regarding the allegations in the

---

[81]Ex. 2 to Supporting Memorandum at 7.

[82]Ex. 3 to Supporting Memorandum at 19.

[83]*Id.*

complaint go to the heart of this case.[84]  Indeed, Pilot Travel states that "Plaintiffs' subpoena to Comdata demands all documents concerning Comdata's communications concerning 'this lawsuit or any aspect of the facts and claims asserted in it.'"[85]

Request 24 seeks relevant information, and the documents should be produced.  TCH may submit a privilege log describing any documents that it claims are protected by the attorney-client privilege or the work product doctrine.  As Pilot Travel points out, however, any communications with third parties would not be protected.[86]

**L.  Requests 29-32**.

Requests 29 through 32 seek copies of documents, in electronic format, concerning TCH's antitrust litigation against Comdata.[87]  Plaintiffs raised their standard objections to these requests.  They also stated that nearly all of the requested documents are designated as confidential under the protective order entered in the Comdata litigation, and the consent of Comdata, or in some cases third parties, is required before Plaintiffs can produce copies of the documents.  Plaintiffs also objected that to the extent any expense is associated with the production, Pilot Travel should bear the expense.[88]  Finally, Plaintiffs refused to produce any documents in response to Request 31 which seeks copies in electronic format of "all databases of

---

[84]Supporting Memorandum at 9.

[85]Reply at 7; Ex. 10 to Reply at 4.

[86]Supporting Memorandum at 9.

[87]Ex. 2 to Supporting Memorandum at 7.

[88]Ex. 3 to Supporting Memorandum at 21-24.

documents and deposition transcripts including exhibits taken in the litigation."[89]  Plaintiffs

objected to this request on the ground that it "calls for the production of privileged information in

the form of databases created by or under the supervision of counsel, which is protected from

disclosure by the attorney-client privilege and work product doctrine."[90]

In response to the motion compel, Plaintiffs state that despite their objections, they have

agreed to produce all of the requested documents, with the exception of the litigation databases,

if the necessary consent is obtained and Pilot Travel bears the cost of production.[91]  In response,

Pilot Travel asserts that TCH has no standing to assert Comdata's rights under the protective

order in the Comdata case.[92]  In this regard, the court notes that the protective order itself

provides the procedure to be followed when a party is ordered by a court to produce confidential

materials.[93]

Regarding the cost of production, the parties agree that the subject matter of this litigation

"is closely related to and overlapping with the subject matter of the Comdata litigation."[94]  As

Pilot Travel contends, production of the requested materials by TCH will greatly reduce the

expenditure of time and resources during discovery because the parties will not have to conduct

redundant written discovery and take depositions of witnesses that have already been deposed on

---

[89]Ex. 2 to Supporting Memorandum at 7.

[90]Ex. 3 to Supporting Memorandum at 23.

[91]Opposition at 8.

[92]Reply at 8.

[93]Agreed Protective Order ¶ 9, docket no. 57, filed July 27, 1998, Case no. 1:96-CV-66 BSJ.

[94]Opposition at 9; Reply at 7-8.

the same issues.[95]  Pilot Travel asserts that the documents' existence in electronic form renders

the costs of production minimal.[96]  Although TCH suggests that copying the requested files will

be expensive and time-consuming, it has not directly disputed Pilot Travel's assertion that the

materials already exist in electronic format, or explained why the production would be unusually

burdensome, other than the fact that the material is voluminous.[97]  The court thus concludes that

TCH has failed to carry its burden on this issue.  Therefore, TCH shall bear the cost of

production.

　　　　In response to Plaintiffs' objection to producing the "litigation databases," Pilot Travel

states that it is not seeking the actual databases, but just the documents and deposition transcripts

within those databases.[98]  As the court understands this dispute, Plaintiffs are willing to produce

those materials.  Accordingly, with the understanding that Plaintiffs will produce the documents

and deposition transcripts contained in the litigation databases, Plaintiffs will not be required to

produce the databases themselves.

　　　　Finally, regarding the claim of attorney-client and work product privilege, Pilot Travel

suggests that any attorney work product issues can easily be remedied by the removal of

comment fields.  As Pilot Travel observes, TCH has offered no suggestion that the removal of

the fields would involve more than the press of a button or simple reprogramming by technical

---

[95]Supporting Memorandum at 10; Reply at 8.

[96]Reply at 8.

[97]Opposition at 9.

[98]Reply at 8.

support personnel.[99]   Accordingly, TCH will be required to produce documents in response to

Requests 29-32.

**M.  Request 33.**

Request 33 asks for all documents "evidencing communications with trucking companies

evidencing a refusal to use the TCH card."[100]   TCH raised its standard objections to this request

including that it is "vague, overbroad, unduly burdensome and not reasonably calculated to lead

to the discovery of admissible evidence."[101]   It also claimed that the request seeks proprietary and

confidential information, and communications that are protected by the attorney-client privilege

and work product doctrine.  In addition, TCH asserted that the request "seeks every

communication by TCH with any prospective customer."[102]   This is clearly an exaggeration.

As Pilot Travel argues, the documents sought in this request are highly relevant to one of

the central issues in this lawsuit, the alleged boycott and refusal to use TCH's fuel card.[103]   The

court concludes that TCH has not carried its burden to support its objections.  Accordingly, TCH

will be required to respond to this request.

---

[99]*Id.*

[100]Ex. 2 to Supporting Memorandum at 8.

[101]Ex. 3 to Supporting Memorandum at 24.

[102]*Id.*

[103]Supporting Memorandum at 10-11; Reply at 9.

**N.  Request 42.**

Request 42 asks for all documents "evidencing communications with any member, staff member, or committee of the United States Senate or House of Representatives."[104]  TCH did not produce any documents in response to this request.  Rather, it objected to the request on the ground that

> it is vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the production of admissible evidence because it purports to encompass any communications with any representative of the U.S. Congress by anyone on any topic.  As a result, the request does not describe the documents sought by PTC with reasonable particularity.[105]

In opposition to the motion to compel, Plaintiffs reiterate their position explaining that they "objected to these requests because they contain no subject matter limitation, and therefore cover communications with Congress by any conceivable person whether or not related to Plaintiffs."[106]

As Pilot Travel points out, however, TCH alluded to communications with Congress in its complaint.  In addition, TCH itself seeks such documents from Pilot Travel and the other defendants, effectively conceding the relevance of the documents.  Further, TCH has not attempted to show that "collection and production of such documents would be particularly burdensome or difficult, and makes no effort at all to show that it or its agents have ever communicated with Congress on any topic unrelated to the allegations of the complaint."[107]

[104]Ex. 2 to Supporting Memorandum at 8.

[105]Ex. 3 to Supporting Memorandum at 29.

[106]Opposition at 11.

[107]Supporting Memorandum at 11.

Accordingly, the court concludes that TCH has not met its burden to support the objections.  It therefore will be required to produce documents in response to this request.

**O.  Request 44.**

Request 44 seeks all documents "evidencing communications with Charles River Associates."[108]  Plaintiffs raised their standard objections to this request including that it is "vague, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence."[109]  Additionally, Plaintiffs stated:  "The only potentially discoverable communications that relate to the issues in this lawsuit concern the work in the Comdata Litigation by Carl Shapiro of CRA, as a testifying expert for Plaintiffs, and James Kearl of CRA, as a testifying expert for Comdata."[110]  Plaintiffs also objected to the request because it "seeks documents protected from disclosure by the rules governing communications with consulting experts and by the attorney-client privilege and work product doctrine."[111]

In opposition to the motion to compel, Plaintiffs state that they have "agreed to produce a copy of Mr. Shapiro's 'expert report and supporting documentation that were produced to Comdata in the Comdata Litigation' (subject to the need to obtain consent from Comdata before producing material designated as confidential under the protective order entered in that case)."[112]

---

[108]Ex. 2 to Supporting Memorandum at 8.

[109]Ex. 3 to Supporting Memorandum at 30.

[110]*Id.*

[111]*Id.*

[112]Opposition at 11.

But Plaintiffs reiterate their objection that the request seeks privileged documents.[113]  Plaintiffs state:

> If Plaintiffs choose to communicate with CRA as a consulting expert on other matters, the fact and content of such communications are privileged and exempt from discovery.  Plaintiffs believe they have satisfied their discovery obligations with regard to RFP 44 by agreeing to produce the expert report of their testifying expert from CRA in the Comdata Litigation, along with all supporting documentation from CRA produced to Comdata in that case.[114]

In response, Pilot Travel points out that Charles River Associates provided expert testimony in the Comdata litigation.  It further states that because that litigation was markedly similar to the claims and issues in this case, the documents are highly relevant and presumptively discoverable since CRA acted as a testifying expert.  Pilot Travel asserts that "TCH's 'belief' that the narrow category of documents they offer satisfies their discovery obligations is unsupported and contrary to the explicit requirements of the Rules."[115]

As Pilot Travel observes, TCH has not suggested that CRA "has ever done any other work for it, or that TCH has communicated with CRA for any other reason."[116]  TCH has not described the documents at issue, nor explained in sufficient detail why they should be protected.  Because the court concludes that TCH has not carried its burden with regard to these documents, it will be required to produce the documents.

---

[113]*Id.*

[114]*Id.*

[115]Reply at 9-10 (citing Fed. R. Civ. P. 26(a)(2)(B), 26(b)(4).

[116]Supporting Memorandum at 12.

**P. Requests 45 & 46.**

Requests 45 and 46 ask for copies in electronic format of all deposition transcripts, and discovery requests and responses in case no. 1:04-CV-177 BSJ which involved some of the same parties in this litigation.[117]  TCH raised several of its standard objections to these requests.  TCH also asserted that much of the information is protected by a protective order entered in that case, and the consent of TA would be required to obtain the documents.  It stated, however, that subject to the objections, it would produce the documents after Pilot Travel's counsel provides written consent from TA authorizing the production of the information, and upon entry of a stipulated protective order.[118]

Although Pilot Travel discussed these requests in the fact section of its memorandum,[119] neither party addressed them in their argument.  Nevertheless, the only dispute appears to be over which party will be required to secure the consent of TA to release the protected material.  In that regard, the court will order TCH to produce the documents in compliance with the procedure outlined in the protective order entered in that case.

**Q. Plaintiffs' Objections to the Instructions and Definitions.**

TCH objected to virtually all of Pilot Travel's instructions and definitions.[120]  The court will address specific objections raised in Pilot Travel's memorandum.

---

[117]Ex. 2 to Supporting Memorandum at 9.

[118]Ex. 3 to Supporting Memorandum at 31-32.

[119]Supporting Memorandum at xiv.

[120]Supporting Memorandum at 13; see Ex. 3 to Supporting Memorandum at 2-6.

**1. Definition of "You," "Your," and "Plaintiff."**

Plaintiffs initially objected to Pilot Travel's definition of these terms.[121]  Subsequently, Plaintiffs adopted a definition of those terms suggested by Pilot Travel.[122]

In support of its motion, Pilot Travel asserts that this definition was adopted *after* Plaintiffs served their responses to this motion.  Pilot Travel therefore contends that Plaintiffs should be compelled to explain how they understood the terms in responding to this motion.[123]

In opposition, Plaintiffs represent that they "have confirmed repeatedly that they are using this definition in responding to PTC's discovery requests."[124]  Accordingly, the court accepts Plaintiffs' representation that they used the definition in their responses and therefore considers this issue resolved.

**2. Definition of "Communication," "Discussion," "Statement," "Evidencing," and "Non-transactional."**

Plaintiffs objected to Pilot Travel's definition of "communication," "discussion," "statement," "evidencing," and "non-transactional."[125]  The parties did not specifically address this dispute in their argument.  However, in its proposed order Pilot Travel asks the court to order Plaintiffs to state what definition of these terms they used in their responses.

---

[121]Ex. 3 to Supporting Memorandum at 3.

[122]Opposition at 12.

[123]Supporting Memorandum at xiv-xv, 13; Reply at 10.

[124]Opposition at 12.

[125]Ex. 3 to Supporting Memorandum at 4.

With regard to the definitions of "communication," "discussion," "statement," and "evidencing," TCH stated in its response that it would interpret the terms "according to standard English dictionary definitions."[126]  The court concludes that TCH's explanation with regard to the definitions of those terms is sufficiently clear.

TCH did not state the definition it relied upon in interpreting the term "non-transactional."  Accordingly, it will be required to provide the definition it used in responding to the document requests.

### 3.  Temporal Scope of Responses.

Pilot Travel's instructions requested information beginning January 1, 1996.[127]  TCH objected to that date as "overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence."[128]

In support of the motion to compel, Pilot Travel notes that the complaint refers to events beginning in 1985 and seems to claim that the alleged boycott began in 1996.  It contends that TCH's objection is therefore inconsistent with its own complaint.[129]

In response to the motion to compel, Plaintiffs note that all parties have sought discovery dating to 1996, and all parties have objected to that date.  Plaintiffs suggest an alternative proposal in which all parties produce documents created since January 1, 2000, as well as

---

[126]*Id.*

[127]Ex. 2 to Supporting Memorandum at 4.

[128]Ex. 3 to Supporting Memorandum at 5.

[129]Supporting Memorandum at 13-14; see Complaint ¶¶ 26, 32-33.

documents created between January 1, 1996 and December 31, 1999, "that relate to any subjects or events on which the party intends to rely in its claims or defenses."[130]

In response to TCH's suggestion, Pilot Travel asserts that TCH waived this objection by failing to support it, and by failing to specify the time period TCH used in responding to the requests. Alternatively, Pilot Travel states that TCH should be required to state the time period it used in responding to the requests so that Pilot Travel can plan its defenses and supplemental discovery accordingly.[131]

The court twice before has urged the parties to come to an agreement on this issue. However, they apparently have failed to do so. As discussed, Plaintiffs' own complaint suggests that the boycott began in 1996, thus making that the relevant time period. Therefore, they will be required to provide documents dating to January 1, 1996.


## ORDER

IT IS HEREBY ORDERED that Pilot Travel's motion to compel responses to its requests for production of documents to TCH is GRANTED[132] in part as follows:

TCH shall produce all non-privileged documents responsive to Request No. 1 asking for all documents relied on, referred to, or evidencing the basis for TCH's responses to Pilot Travel's

---

[130]Opposition at 12-13.

[131]Reply at 10.

[132]Motion to Compel, docket no. 96, filed March 1, 2007. This Court also grants Pilot Travel's Motion to Compel with respect to Plaintiffs Flying J Inc., Transportation Alliance Bank Inc., and TON Services, Inc., to the extent that the requests for production of documents and objections thereto are substantially similar to the requests hereby compelled in this Order. A chart indicating the similar requests and objections is attached to Pilot Travel's proposed order as Exhibit 1.

First Set of Interrogatories.  With respect to those documents that TCH claims are protected by the attorney-client privilege or the work-product doctrine, TCH shall provide a privilege log sufficient to allow Pilot Travel to assess the applicability of the privilege.[133]

TCH shall produce all documents responsive to Request Nos. 4 and 5 seeking copies of each contract with which TCH contends Pilot Travel or Pilot Corp. interfered and a list of potential economic relations with which TCH contends Pilot Travel or Pilot Corp. interfered.

TCH shall produce all non-privileged documents responsive to Request No. 6 asking for all documents evidencing the damages claimed by TCH, itemized by cause of action and causation as alleged in TCH's Complaint.  If TCH contends that some of these documents are protected by the work product doctrine, it should provide a privilege log of the subject documents.

TCH shall produce all documents responsive to Request No. 7 seeking a list of all truck stops, travel centers, or other commercial entities that accept and process the TCH card as payment in proprietary transactions for each year beginning in 1996.

TCH shall produce all non-privileged documents responsive to Request No. 8 seeking all documents evidencing TCH's substantive, non-transactional communications with entities that accept the TCH card as payment in proprietary transactions.  If TCH contends that some of the documents are privileged, it shall provide a privilege log describing those documents.

TCH shall produce all non-privileged responsive documents to Request Nos. 13 and 14 asking for all documents evidencing TCH's communications with the Federal Trade

---

[133]See Fed. R. Civ. P. 26(b)(5)(A).

Commission.  TCH shall provide a privilege log listing any documents that it claims are protected under the attorney-client privilege and work product doctrine.

TCH shall produce all non-privileged documents responsive to Request Nos. 15 and 16 asking for documents evidencing non-transactional communications with or about Comdata.  In addition, TCH shall provide a privilege log listing the documents that it claims are protected by the attorney-client privilege and work product doctrine.

TCH shall produce all responsive documents to Request No. 18 seeking a copy of each complaint in each case in which TCH was a plaintiff or sought affirmative relief.

TCH shall produce all documents responsive to Request Nos. 20, 22, and 23 asking for financial statements, reports, management analyses, debt instruments, and financial memoranda or analyses provided to third parties for the period beginning January 1, 1996 onward.  They need not produce loan documents, or additional documents in response to Request No. 21.

TCH shall produce all responsive non-privileged documents to Request No. 24 asking for documents evidencing communications with third parties regarding TCH's allegations in its Complaint.  With regard to documents that are proprietary or confidential, TCH may invoke the protections under the protective order entered in this case.  To the extent that TCH claims the documents are protected by the attorney-client privilege or work product doctrine, it shall provide a privilege log supporting its claims.

TCH shall produce all responsive non-privileged documents to Request Nos. 29, 30, 31, and 32 asking for electronic documents and databases regarding TCH's antitrust litigation against Comdata, including but not limited to:  electronic versions of depositions, deposition exhibits,

discovery documents, and electronic versions of the memoranda and exhibits filed in TCH's litigation against Comdata.  TCH need only produce the documents contained in the databases, and not the databases themselves.  If TCH still maintains that some of the documents are protected by the attorney-client privilege or work-product doctrine, it shall prepare a privilege log to support its claims.

TCH shall produce all responsive non-privileged documents to Request No. 33 asking for all documents evidencing communications with trucking companies, which demonstrate a refusal by the trucking company to use the TCH card.  If TCH claims that some of the documents are protected by the attorney-client privilege or work-product doctrine, it shall provide a privilege log to support its claims.

TCH shall produce all responsive documents to Request No. 42 asking for all documents evidencing communications with any member, staff member, or committee of the United States Senate or House of Representatives.

TCH shall produce all responsive non-privileged documents to Request No. 44 asking for all documents evidencing communications with Charles River Associates.  If TCH contends that some of these documents are protected, it shall submit a privilege log supporting its claims.

TCH shall produce all responsive documents to Request Nos. 45 and 46 asking for discovery documents in the recent litigation between TCH and TA.

TCH has sufficiently explained the definition of "you," "your," "plaintiff," "communication," "discussion," "statement," and "evidencing" that it used in responding to the document requests.

TCH shall state the definition of "non-transactional" employed by TCH in its responses.

TCH's objection to the time period identified in Pilot Travel's Instructions is overruled, and TCH shall state the time period it used in responding to the First Set.

TCH shall supplement its responses to the First Set to the extent necessary to ensure the responses are complete for the time period beginning January 1, 1996.

This Order in no way relieves TCH of its duty to supplement its answers to discovery materials pursuant to Federal Rule of Civil Procedure 26(e).

Compliance with this order is due August 24, 2007.


July 30, 2007.

BY THE COURT:


David Nuffer
U.S. Magistrate Judge