IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| FLYING J INC., et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>TA OPERATING CORPORATION, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART MOTION TO COMPEL**<br><br>Case No: 1:06-CV-30 TC<br><br>District Judge Tena Campbell<br><br>Magistrate Judge David Nuffer |

Plaintiffs Flying J Inc., TCH LLC, Transportation Alliance Bank Inc., and TON Services Inc. have filed a motion to compel[1] supplemental responses to Plaintiffs' First Set of Requests for Production of Documents to Pilot Travel and Pilot Corporation. For the reasons discussed below, the court grants the motion to compel with certain modifications.

**BACKGROUND**

On September 22, 2006, Plaintiffs served their First Set of Requests for Production of Documents on Pilot Travel and Pilot Corp. On December 1, 2006, Pilot Travel and Pilot Corp. served their responses and objections to the document requests.[2] On February 23, 2007, counsel for Plaintiffs sent a letter to counsel for Pilot Travel and Pilot Corp. in an effort to confer on

---

[1] Plaintiffs' Motion to Compel the Production of Documents by Pilot Travel and Pilot Corporation, docket no. 108, filed April 6, 2007.

[2] Plaintiffs' Memorandum in Support of Motion to Compel Production of Documents by Pilot Travel and Pilot Corporation ("Supporting Memorandum") at 2, docket no. 109, filed April 6, 2007. Copies of Plaintiffs' requests and Pilot Travel's responses are attached to the Supporting Memorandum as Exhibits A and B, respectively. Unless otherwise specified, all exhibits are attached to the Supporting Memorandum.

discovery issues raised by Pilot Travel and Pilot Corp.'s responses and to identify and explain what counsel considered to be deficiencies in those responses and objections.[3] Counsel for Pilot Travel and Pilot Corp. responded by letter on March 14, 2007.[4] On March 19, 2007, counsel for Plaintiffs and counsel for Pilot Travel and Pilot Corp. met and conferred via telephone, but were unable to resolve the disputed issues.[5] On March 26, 2007, counsel for Plaintiffs sent a letter to counsel for Pilot Travel and Pilot Corp. summarizing the matters discussed in the March 19 telephone conference.[6] Counsel for Pilot Travel and Pilot Corp. responded by letter on April 3, 2007.[7]

Plaintiffs state that in an effort to narrow the issues before the court, and pending receipt of Pilot Travel and Pilot Corp.'s supplemental responses to other requests, they move to compel responses to only eight of the forty-eight requests served on Pilot Travel and Pilot Corp., specifically Request Nos. 4, 16, 25, 35, 31, 32, 33, and 38.  Plaintiffs state that as of the date of the motion, Pilot Travel and Pilot Corp. have indicated that they do not plan to provide further response to any of these requests.[8]  The court will discuss each disputed request in turn.

---

[3]Supporting Memorandum at 2; Letter from K. Lewis to J. Bogart, Ex. C.

[4]Supporting Memorandum at 3; Letter from J. Bogart to K. Lewis, Ex. D.

[5]Supporting Memorandum at 3.

[6]*Id.*; Letter from K. Lewis to J. Bogart, Ex. E.

[7]Supporting Memorandum at 3; Letter from C. Stormont to K. Lewis, Ex. F.

[8]Supporting Memorandum at 3.

**DISCUSSION**

**A.  Scope of Discovery.**

Rule 26 provides that a party "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."[9]  Further, information need not be admissible at trial if it appears to be "reasonably calculated to lead to the discovery of admissible evidence."[10]  "Relevancy is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is *any possibility* the information sought may be relevant to the subject matter of the action."[11]  Rule 34, pertaining to the production of documents, is similarly broad in scope.[12]

In antitrust cases, "the historically expansive definition of discoverability under the Federal Rules of Civil Procedure has been interpreted particularly broadly" especially since "the facts of the conspiracy are largely in the possession and within the knowledge of the defendant and the defendant has the ability to conceal those facts from the adversary."[13]

Plaintiffs state that the disputed requests seek three categories of documents that are relevant to this case:  "(1) Pilot's communications with competitors and third parties regarding

---

[9]Fed. R. Civ. P. 26(b)(1).

[10]*Id.*

[11]*Smith v. MCI Telecomm. Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991)(emphasis added).

[12]8A Charles Alan Wright, et al. *Federal Practice and Procedure* § 2206 (2d ed. 1994).

[13]ABA Section of Antitrust Law, *Antitrust Discovery Handbook* 17 (2d ed. 2003).

specific topics, (2) Pilot's financial and diesel fuel sales information, and (3) other business documents relevant to this antitrust suit."[14]

**B. Requests 4, 25, & 32–Documents Concerning Communications.**

    **1. Request 4.**

Request 4 seeks documents "concerning Pilot's communications with TA and other truck stop companies regarding Flying J and fuel cards processed over the TCH platform."[15] Although Pilot Travel and Pilot Corp. initially objected to this request, they now have agreed to produce documents responsive to this request.[16] Accordingly, this dispute is resolved.

    **2. Request 25.**

Request 25 seeks documents "concerning Pilot's communication with third party billing companies or proprietary billing services, such as Comdata and EFS, regarding the processing of fuel cards."[17] Pilot Travel and Pilot Corp. objected to this request on several grounds including that "it calls for documents that are neither relevant to claims or defenses in this case nor reasonably calculated to lead to the discovery of admissible evidence."[18] Subject to the

---

[14]Supporting Memorandum at 6.

[15]*Id.* at 7.

[16]Memorandum of Pilot Travel and Pilot Corporation in Opposition to Plaintiffs' Motion to Compel the Production of Documents ("Opposition") at 1-2, docket no. 111, filed April 24, 2007.

[17]Supporting Memorandum at 10.

[18]Ex. B at 23.

objections, they agreed to produce documents "that concern communications with Comdata, Concorde EFS, T-Chek, or TransPlatinum that concern Flying J, TCH, TON, or TAB."[19]

In opposition to the motion to compel, Pilot Travel and Pilot Corp. continue to argue that this request demands irrelevant documents. They assert that they have agreed to produce the documents described in their response, and that "the only documents not being produced are those that relate generally to the 'processing of fuel cards' that in no way relate to Plaintiffs."[20] They state that Plaintiffs' complaint "is limited to a boycott of 'Flying J, the TCH Fuel Card and Trucker Fuel Cards processed by TCH,' and concerns acceptance, not processing, of cards."[21] They argue that Plaintiffs are attempting to expand discovery beyond the scope of their actual claims. In sum, they contend that they have already agreed to produce all documents that fall within the ambit of the complaint, and that therefore, Plaintiffs' argument that they should produce additional documents is without basis.[22]

In support of the motion, Plaintiffs state that discovery of Pilot Travel and Pilot Corp.'s communications with third-party billing companies is likely to lead to the discovery of admissible evidence because there may be relevant communications regarding the processing of fuel cards that do not happen to concern the named Plaintiffs. They point out that the complaint alleges that "Comdata, which dominates both the trucker fuel card and point of sales systems markets, rewards Pilot and TA with special low transaction fees for processing Comdata's fuel

---

[19]*Id.*

[20]Opposition at 4.

[21]Opposition at at 5 (citing Complaint ¶¶ 64, 66, 68).

[22]Opposition at 5.

card transactions in return for their refusal to use other companies for the processing of fuel cards."[23]  They argue, therefore, that "Pilot's communications regarding the processing of trucker fuel cards with Comdata and other billing companies may provide direct evidence of the alleged boycott."[24]  As an example, they cite an e-mail authored by Mike Hinderliter which refers to communications "between TA and EFS (a third-party billing company), regarding the consequences of a decision by Irving Oil to switch from the EFS platform to the TCH platform for the processing of fuel cards."[25]  Plaintiffs state that they are concerned that Pilot Travel and Pilot Corp.'s position would allow them to hold back relevant communications on the ground that they deem such communications not relevant.  For example, they might take the position that "communications with EFS concerning Irving Oil's decision to leave the EFS platform do not also 'concern Flying J, TCH, TON or TAB.'"[26]

  The court agrees that communications, such as those referred to in the Hinderliter e-mail, would be highly relevant to the boycott allegations, even though they might not specifically refer to any of the named Plaintiffs.  Accordingly, Pilot Travel and Pilot Corp. will be required to produce all documents responsive to Request 25.

---

[23]Supporting Memorandum at 10 (citing Complaint at ¶ 38).

[24]Supporting Memorandum at 10-11.

[25]Supporting Memorandum at 11; Ex. G.

[26]Plaintiffs' Reply in Support of Motion to Compel Production of Documents by Pilot Travel and Pilot Corporation ("Reply") at 6-7, docket no. 113, filed May 3, 2007.

### 3. Request 32.

Request 32 seeks documents "concerning Pilot's communications with TA and other truck stop companies regarding fuel cards, point of sales systems, fuel prices, or the sale of fuel."[27] Pilot Travel and Pilot Corp. objected to this request on various grounds, but agreed to produce certain documents subject to the objections[28] On the motion to compel, Plaintiffs only challenge Pilot Travel and Pilot Corp.'s objections to the production of documents "that relate to fuel prices or the sale of fuel."[29]

In opposition to this request, Pilot Travel and Pilot Corp. again contend that it is outside the allegations of the complaint. They assert that the complaint alleges that Defendants "collectively boycotted Flying J, the TCH Fuel Card and Trucker Fuel Cards processed by TCH by agreeing with horizontal competitors in the Truck Stop Market not to accept the TCH Fuel Card and Trucker Fuel Cards processed over the TCH platform as a method of payment."[30] Pilot Travel and Pilot Corp. state that "Plaintiffs make *no claim* of concerted action relating to fuel prices or the sale of fuel."[31] They assert that "Plaintiffs' claim of a conspiracy relating to a boycott of *fuel cards* does not entitle them to explore Defendants' businesses generally,

---

[27]Supporting Memorandum at 9.

[28]Ex. B at 27-28.

[29]Supporting Memorandum at 9.

[30]Opposition at 7 (quoting Complaint ¶ 64).

[31]Opposition at 7 (emphasis in original).

particularly such highly sensitive information regarding *fuel prices.*"[32]  They argue, therefore, that Plaintiffs have failed to show the relevance of this request.

Plaintiffs state that the complaint alleges that "trucker fuel cards are used as mechanisms to provide truck drivers and trucking companies with negotiated or discounted diesel fuel prices agreed to by certain truck stops and often administered by the issuer of the trucker fuel card."[33]  Plaintiffs further assert that "[t]hese special pricing arrangements provided by trucker fuel cards affect competition and may influence decisions by truck stops and their trucking customers whether to accept or carry a particular card."[34]  Plaintiffs state that they "are already aware of instances where Comdata jointly markets the Comdata card to trucking companies along with special fuel pricing offers from truck stops such as Pilot and TA."[35]  Plaintiffs argue that "[t]o the extent that Pilot obtains or exchanges information with competitors regarding fuel prices, including fuel discounts through joint bids that fuel card companies such as Comdata and EFS submit to trucking companies, Plaintiffs are entitled to that information."[36]

The court concludes that Pilot Travel and Pilot Corp.'s reading of the complaint is too narrow, and that information regarding fuel prices and the sale of fuel are relevant to the claims in this case.  Accordingly, Pilot Travel and Pilot Corp. will be required to produce all documents responsive to Request 32.

---

[32]*Id.* (emphasis in original).

[33]Supporting Memorandum at 9 (citing Complaint ¶ 19).

[34]Supporting Memorandum at 9.

[35]*Id.*

[36]*Id.* at 9-10.

### C. Requests 17, 35, & 38–Financial Documents.

#### 1. Requests 17 & 35.

Requests 17 and 35 seek "financial documents sufficient to disclose the percent of diesel fuel sales at Pilot truck stops purchased by each method of payment, and documents sufficient to identify all methods of payment accepted by Pilot truck stops for the purchase of diesel fuel, including documents sufficient to identify the aggregate diesel fuel purchases made in dollars, and the percent of diesel fuel sales, made with each method of payment."[37]  Pilot Travel and Pilot Corp. objected to these requests on several grounds including that they require Pilot Travel and Pilot Corp. "to create documents outside of the ordinary course of their business practices," and because they attempt to disguise interrogatories as requests for production.[38]

In support of the motion to compel, Plaintiffs state that they "are certain that Pilot tracks the use of various methods of payment at its truck stops as part of its core business."[39]  They further state that they "have emphasized during the meet-and-confer process that the requests merely seek data that already exists and should be easy for Pilot to extract from its electronic or paper files."[40]

In opposition to the motion to compel, Pilot Travel and Pilot Corp. continue their objection that the requests seek to force them to create documents that do not exist.  They state that Plaintiffs concede as much when they state that the documents should be easy to "extract."

---

[37]Supporting Memorandum at 11.

[38]Ex. B. at 18-19, 30.

[39]Supporting Memorandum at 11.

[40]*Id*. at 12.

They assert that Rule 34 "does not authorize one party to force another party to 'extract' data and create documents."[41]

In response, Plaintiffs state that they are not asking Pilot Travel and Pilot Corp. to produce documents that do not otherwise exist. Instead they are asking them "to produce already existing data (whether or not these data happen to be stored in electronic form) responsive to these Requests."[42] They assert that "[w]hether Pilot needs to extract, download, copy, or print these electronic documents has no bearing on Pilot's obligations to produce them."[43] They further state that Pilot Travel and Pilot Corp. have served almost identical requests on Flying J, and "Plaintiffs have stated their willingness to agree to the production of documents that disclose such data."[44]

The court concludes that these requests seek relevant information. Further, Pilot Travel and Pilot Corp. have not asserted that the data is not readily accessible. Accordingly, Pilot Travel and Pilot Corp. will be required to produce already-existing data, whether in raw or synthesized form, responsive to Requests 17 and 35.

**2. Request 38.**

Request 38 seeks "financial statements, reports, and management analyses for each year since July 1, 1996 and other documents that concern Pilot's financial condition or

---

[41]Opposition at 9.

[42]Reply at 10.

[43]*Id.*

[44]*Id.*

performance."[45]  In response to this request, Pilot Travel and Pilot Corp. agreed to produce "financial statements, reports, and management analyses, if any, for each year since January 1, 2002 that concern Pilot Travel's and/or Pilot Corp.'s performance *and that relate to Flying J or fuel cards processed by TCH*."[46]

Plaintiffs argue that Pilot Travel and Pilot Corp.'s attempt to narrow the scope of this request is unreasonable, and would allow them to produce almost none of their financial information since it is likely that many of their financial statements and reports do not also relate to Flying J or cards processed by TCH.  They state that documents concerning Pilot Travel and Pilot Corp.'s financial performance and condition "are relevant to this antitrust case, especially as they relate to Plaintiffs' damages."[47]  In addition, they state that documents likely exist "containing financial analyses by management that contain critical market information that do not also happen to concern Flying J or cards processed by TCH."[48]  Plaintiffs contend that such information is reasonably likely to lead to the discovery of admissible evidence.[49]

In opposition to the motion to compel, Pilot Travel and Pilot Corp. state that they have agreed to produce the documents called for by this request "except those that do not concern Flying J or cards processed over the TCH platform, based on objections of overbreadth and

---

[45]Supporting Memorandum at 12.

[46]*Id.*; Ex. B. at 32.

[47]Supporting Memorandum at 12; Reply at 9.

[48]Reply at 9.

[49]*Id.*

relevance."[50]  Pilot Travel and Pilot Corp. complain that Plaintiffs are seeking "discovery of all of Pilot Travel's and Pilot Corp.'s business (in this instance, competitively sensitive financial records and management analyses) without any regard to the claims actually asserted or the fact that Plaintiffs are only willing to produce annual financial statements in response to a similar Request by Pilot Travel."[51]

The court concludes that the financial information sought by Request 38 is relevant to the issues in this lawsuit, particularly damages and market information, and appears to be reasonably calculated to lead to the discovery of admissible evidence.  Accordingly, Pilot Travel and Pilot Corp. will be required to respond to Request 38.[52]

### D.  Requests 31 & 33–Other Relevant Business Documents.

#### 1.  Request 31.

Request 31 seeks documents "concerning Pilot's or Comdata's business plans, strategy, market analyses, strategic planning, goals, and/or objectives relating to trucker fuel cards or the proprietary billing card industry."[53]  In response to this request, Pilot Travel and Pilot Corp. agreed "to produce 'their business plans, strategy, market analyses, strategic planning, goals, and/or objectives that concern Flying J' or cards processed over the TCH platform."[54]  In

---

[50]Opposition at 8.

[51]*Id.*

[52]In regard to Pilot Travel and Pilot Corp.'s assertion that Plaintiffs have refused to produce similar documents, the court notes that it has ordered Plaintiffs to produce this information.

[53]Supporting Memorandum at 13.

[54]Opposition at 6 (quoting Ex. B at 27).

opposition to the motion to compel, Pilot Travel and Pilot Corp. state that they "only object to the production of materials that have nothing to do with Plaintiffs' claims."[55] They deny that they have refused to produce responsive documents concerning Comdata, as Plaintiffs have argued, "but instead object to providing documents that have nothing to do with the Plaintiffs or their Complaint."[56] Finally, Pilot Travel and Pilot Corp. state that "if Plaintiffs believe that Comdata's conduct and business plans are salient to their claims, they should seek the documents from Comdata."[57]

In support of their motion, Plaintiffs state that they only seek "documents in Pilot's possession that concern Comdata (with whom Pilot has a longstanding, close relationship), such as documents that discuss, mention, analyze, or refer to Comdata's business plans in some way."[58] Plaintiffs have alleged that "to hinder TCH's growth as a competitor to Comdata, Comdata rewarded the boycott participants, Pilot and TA, by offering them special pricing for the processing of Comdata fuel card transactions."[59]

Plaintiffs further assert that Pilot Travel and Pilot Corp.'s attempt to limit the scope of this request to Flying J or TCH is too narrow. They note that the request, "which is limited to

---

[55]Opposition at 6.

[56]*Id.*

[57]*Id.* at 7.

[58]Supporting Memorandum at 13.

[59]*Id.*

documents concerning fuel cards or the proprietary billing card industry, is already narrowly tailored to the disputed issues in this case."[60]

The court concludes that the documents sought by this request are relevant and likely to lead to the discovery of admissible evidence. Accordingly, Pilot Travel and Pilot Corp. will be required to produce documents responsive to Request 31.

**2. Request 33.**

Request 33 seeks documents "concerning the Pilot 'proprietary fuel card,' including all documents pertaining to the card's data capture features and efforts by Pilot to have the card accepted at locations other than Pilot truckstops."[61] In response to this request, Pilot Travel and Pilot Corp. agreed to produce documents "concerning the Pilot Owner/Operator Small Truck Fleet Card and the Pilot Fleet Card that concern the data capture features of those cards, efforts to have those cards accepted at locations not owned by Pilot, and exemplars of marketing materials, sample agreements, and marketing plans."[62] In response to the motion to compel, Pilot Travel and Pilot Corp. assert that they have agreed to produce the requested documents, "except for documents relating to the processing of card transactions, as Plaintiffs have yet to explain the relevance of such documents."[63]

Plaintiffs respond that unless Pilot Travel and Pilot Corp. have changed their position, their memorandum incorrectly states that they have agreed to produce the requested documents.

---

[60]*Id.* at 13-14.

[61]*Id.* at 14.

[62]*Id.*

[63]Opposition at 3-4.

Plaintiffs explain that the request seeks several other categories of documents that Pilot Travel and Pilot Corp. have not agreed to produce including "information on the identity of truck stops and truck fleet/driver customers who accept or use these cards, copies of Pilot's agreements with such customers, Pilot's communications with prospective cardholders, the time period during which the cards have been offered, and information on how the card transactions are processed."[64]  Plaintiffs explain that this information is relevant because "Pilot and TA have raised arguments that their own fuel cards somehow compete with other cards such as the TCH card, and Plaintiffs are entitled to information about Pilot's cards to dispute the market definition position adopted by defendants."[65]  Regarding Pilot Travel and Pilot Corp.'s contention that Plaintiffs have failed to explain the relevance of documents relating to the processing of card transactions, Plaintiffs state that "it is the processing of the cards through which special pricing programs are administered, and data collection purchase controls are implemented."[66]

       The court concludes that the documents sought by this request are relevant and reasonably calculated to lead to the discovery of admissible evidence.  Accordingly, Pilot Travel and Pilot Corp. will be required to produce documents responsive to Request 33.

---

[64]Reply at 3-4.

[65]*Id.* at 4 (citing 6 James Wm. Moore, et al., *Moore's Federal Practice*, § 26.46, at 26-146.27 & n.13 (3d. ed. 2006)) (stating that courts consistently permit detailed discovery of a party's business information in antitrust cases, including information concerning products a defendant has claimed should be included in the relevant markets identified by the plaintiff).

[66]Reply at 4.

## ORDER

The Court HEREBY ORDERS that Plaintiffs' Motion To Compel Production of Documents By Pilot Travel and Pilot Corp. is GRANTED.[67] Defendants Pilot Travel and Pilot Corp. shall produce all documents responsive to Plaintiffs' Requests For Production Nos. 17, 25, 31, 32, 33, 35, and 38. Pilot Travel and Pilot Corp. already have agreed to produce documents responsive to Request No. 4.

Responses shall be produced by August 24, 2007.

This Order in no way relieves Pilot Travel or Pilot Corp. of their duty to supplement their answers to discovery materials pursuant to Federal Rule of Civil Procedure 26(e).

DATED this 30th day of July, 2007.

BY THE COURT:

David Nuffer
U.S. Magistrate Judge

---

[67]Plaintiffs' Motion to Compel the Production of Documents by Pilot Travel and Pilot Corporation, docket no. 108, filed April 6, 2007.