**HOWREY LLP**
Richard W. Casey (0590)
John H. Bogart (8305)
Scott D. McCoy (9749)
170 South Main Street, Suite 400
Salt Lake City, UT 84101
Telephone: (801) 533-8383
Facsimile: (801) 531-1486
caseyr@howrey.com
bogartj@howrey.com
mccoys@howrey.com

Alan M. Grimaldi (*pro hac vice*)
1299 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 783-0800
Facsimile: (202) 383-6610
grimaldia@howrey.com

    Attorneys for Defendants
    Pilot Travel Centers LLC and Pilot Corporation

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
### CENTRAL DIVISION

| | |
|---|---|
| FLYING J INC., a Utah corporation, TCH LLC, a Utah limited liability company, TRANSPORTATION ALLIANCE BANK INC., a Utah corporation, and TON SERVICES, INC., a Utah corporation,<br><br>    Plaintiffs,<br><br>vs.<br><br>TA OPERATING CORPORATION, now known as TA OPERATING LLC, a Delaware limited liability company d/b/a TRAVELCENTERS OF AMERICA; TRAVELCENTERS OF AMERICA LLC; PILOT TRAVEL CENTERS LLC, a Delaware limited liability company; PILOT CORPORATION, a Tennessee corporation, and COMDATA NETWORK, INC., d/b/a COMDATA CORPORATION,<br><br>    Defendants. | **MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DATA WHICH DOES NOT EXIST**<br><br><br>Case No. 1:06cv00030 TC<br><br>Honorable Tena Campbell<br><br>Magistrate David O. Nuffer |

Plaintiffs seek an order for the production of information which Pilot Travel Centers LLC ("Pilot Travel") does not possess. In the ordinary course of business, Pilot Travel retains transactional information sufficient to provide the method of payment information at issue here only as far back as 2005, but no further. Pilot Travel timely extracted all of the responsive information and provided it to Plaintiffs in the agreed-upon format. Exactly what Plaintiffs did. The fact that the parties possess responsive information for different periods is immaterial. Each has a duty to produce what it has, and that is exactly what happened here.

In 2005, Pilot Travel introduced a new point of sale data collection system called ReMa. ReMa enabled Pilot Travel to collect, collate and record detailed method of payment information for each transaction. Pursuant to the agreement among the parties in April 2008, Pilot Travel produced the transaction information available to it in precisely the format agreed on by Plaintiffs. Plaintiffs now are demanding transactional information for a period before Pilot Travel even has such information.

In May 2007, Plaintiffs were explicitly informed that Pilot Travel did not retain such information before 2005, *i.e.*, before the installation of ReMa. Pilot Travel's previous systems, involving Trendar and StorePoint (and other point of sale systems) did not record the desired information, and Pilot Travel did not compile the information from other sources. Nevertheless, Plaintiffs argue that this Court should order Pilot to somehow concoct "data" for pre-2005 periods merely because Plaintiffs kept transaction records for an earlier period.

Plaintiffs conflate a discussion of the format for disclosure of information about method of payment with a discussion of the temporal scope of production of such information. In the ordinary course of business, Plaintiffs create (and retain, although they refuse to produce) reports collecting information about method of payment at issue here. Pilot Travel does not regularly

create such reports (Plaintiffs' contrary assertion is false). That is the reason there was a discussion of a format for production of the information – had all parties created relevant reports in the ordinary course of business, those documents would simply have been produced. Plaintiffs refused to produce responsive documents unless all parties produced information in identical format. Pilot Travel proposed a format for a report it could create which would provide the relevant information. Plaintiffs accepted that format. Pilot Travel assembled the method of payment information in the agreed on format and produced it to Plaintiffs. Pilot Travel's report covers the entire time period of information reasonably accessible to it, which is to say all of the relevant information it actually had. Plaintiffs do not claim to have done anything different. Just as Pilot Travel did, they collected live information concerning methods of payment and produced it in summary form.

Plaintiffs' Motion places only one question before this Court. Should the Court issue a discovery order requiring a party to manufacture information it neither has now nor ever had? The answer is no.

## FACTUAL BACKGROUND

1. In 2005, Pilot Travel replaced its point of sale system. (Decl. of J. Birdwell in Supp. of Mem. in Opp'n to Pls.' Mot. to Compel Produc. of Data Which Does Not Exist, 8/19/08, ¶ 2, attached hereto as Exhibit A.) Under the predecessor system, information of the kind and detail reflected in the method of payment information exchanged by the parties was not captured. (*Id.*, ¶ 3.) The new system installed in 2005, and fully rolled out through 2006, allows collection of information sufficient to provide the method of payment information at issue here. (*Id.*, ¶4.) Pilot Travel can provide method of information beginning with the installation and operation of the new point of sale system, ReMa. (*Id.*)

2. Information for the full period available was included in Pilot Travel's method of payment production. (*Id.*, ¶¶ 3-4; Total Diesel Sales Dollars, 2005-07 (PT0554541-44), attached hereto as Exhibit B.)

3. Pilot Travel does not, in the ordinary course of business, generate reports concerning methods of payment with the information requested here. (Ex. A, ¶¶ 3, 4.) Plaintiffs do create reports concerning methods of payment in the ordinary course of business. Plaintiffs, however, have refused to produce those reports in any form to Pilot Travel.

4. Beginning in early 2007, the parties began discussion of their respective ESI systems.

5. On May 4, 2007, as part of its voluntary disclosures concerning ESI systems, Pilot Travel provided Plaintiffs with a description of Pilot Travel's ESI systems. (Letter from C. Stormont to J. Toth and T. Shaughnessy, 5/4/07, attached hereto as Exhibit C.)

6. In its May 4, 2007 disclosure, Pilot Travel expressly noted the limits of information concerning transactional data. Pilot Travel maintains "database backup tapes for thirteen (13) months . . . . After being served with the Complaint in this matter, Pilot Travel and Pilot Corp. ceased recycling backup tapes and have maintained all of their backup tapes dating back to April 2005." (*Id.* at 3.)

7. On October 11, 2007, Pilot Travel proposed a format for production of information concerning methods of payment. (Letter from J. Bogart to G. Kerwin, 10/11/07, attached hereto as Exhibit D.) On December 4, 2007, Plaintiffs confirmed their agreement to Pilot Travel producing information in the proposed format. (Letter from M. Crimmins to T. Shaughnessy and J. Bogart, 12/4/07, attached hereto as Exhibit E; *but see* Letter from T. Shaughnessy to M. Crimmins, 12/13/07, attached hereto as Exhibit F.)

8.      In December 2007, Plaintiffs decided that the parties should produce information about methods of payment, notwithstanding that ESI issues had not been resolved and that Plaintiffs refused to produce TCH (and other) spreadsheets in native format. (Letter from M. Crimmins to T. Shaughnessy and J. Bogart, 12/20/07 (w/o enclosures), attached hereto as Exhibit G.) Pilot Travel requested that all ESI documents be produced at the same time. (Letter from J. Bogart to M. Crimmins, 12/27/07, attached hereto as Exhibit H.) Plaintiffs refused that request.

9.      In November 2007, Mr. Crimmins, counsel for Plaintiffs, telephoned Pilot Travel's counsel, Mr. Bogart, to discuss the method of payment production. (Decl. of J. Bogart in Supp. of Opp'n to Pls.' Mot. to Compel Produc. of Information that Does Not Exist, 8/20/08, ¶ 2, attached hereto as Exhibit I.) Mr. Crimmins stated that Plaintiffs had access to information only through 2002, and stated that Plaintiffs intended to limit their production to that period. (*Id.,* ¶ 3.) Mr. Bogart responded that Plaintiffs' production would be acceptable as Pilot Travel believed that the parties were required to produce only what was accessible. (*Id.*) If 2002 was all that was reasonably accessible to Plaintiffs, then that was all Plaintiffs needed to produce. Mr. Crimmins accepted that statement. (*Id.*) There was no discussion of what Pilot Travel expected or intended to do with respect to production. Mr. Crimmins never asked about the period for which Pilot Travel had reasonably accessible data, nor did he ask that Pilot Travel produce for the same period as Plaintiffs. (*Id.*) As Pilot Travel had already described the limits of its data, there was no reason to think that Plaintiffs were not already aware that Pilot Travel would not produce information reaching back any further than 2005.

10.     On February 19, 2008, Plaintiffs produced method of payment information covering the period for which they had live data. (Letter from J. Diamanti to J. Bogart and T. Shaughnessy, 2/19/08, attached hereto as Exhibit J.)

11. On April 11, 2008, Pilot Travel produced method of payment information covering the period for which it had data. (Letter from J. Bogart to M. Crimmins, 4/11/08, attached hereto as Exhibit K.)

12. On April 16, 2008, Plaintiffs demanded that Pilot Travel provide supplemental information. (Letter from M. Crimmins to J. Bogart, 4/16/08, attached hereto as Exhibit L.)

13. On April 22, 2008, Pilot Travel explained to Plaintiffs that Pilot Travel had produced all the information which was reasonably accessible, and that it did not believe it was required to or that the parties had agreed to load back-up tapes in order to provide method of payment information. Pilot Travel noted that it had already identified the limits of its live data in May 2007. (Letter from J. Bogart to M. Crimmins, 4/22/08, attached hereto as Exhibit M.)

14. To date, the parties have not been required to load back-up tapes to collect ESI. The only time the issue has been expressly addressed by the parties in negotiation (with respect to e-mail custodians), no one thought the parties should go to back-up sources for collection. No party has proposed that forensic examination of back-up tapes is appropriate. The Court did not require Plaintiffs to collect information from back-up tapes in responding to that Request (but left the issue open for reconsideration on an appropriate showing of need). (Mem. Decision and Order Granting in Part Mot. to Compel, 5/6/08 at 3-4, attached hereto as Exhibit N.)

15. On May 23, 2008, Plaintiffs again demanded that Pilot Travel provide supplemental information. (Letter from M. Crimmins to J. Bogart, 5/23/08, attached hereto as Exhibit O.) Plaintiffs did not deny that they were informed of the limits of live data in May 2007. Plaintiffs have not denied that they limited their production to live data and have never claimed that they loaded back-up tapes in providing method of payment information. (*Id.*)

Plaintiffs have admitted that they produced such method of payment information as was reasonably accessible, exactly what Pilot Travel has done.

16. Pilot Travel does not have back-up tapes which contain the requested method of payment information (other than for ReMa, which has already been produced). (Ex. A, ¶¶ 3, 4.) The prior point of sale systems did not compile that information, nor retain data from which it could be extracted. (*Id.*)

**ARGUMENT**

There is no dispute about whether the method of payment information produced by Pilot Travel is, for the period covered, adequate and consistent with the agreement of the parties. It is. Plaintiffs agreed to the format of production and to the level of detail. The only issue is whether Pilot Travel's production should encompass a time period for which it does not have information. Pilot Travel produced information for the period through 2005. Plaintiffs now demand more, asserting that Pilot Travel must produce information going back to 2002 even though that information is not in the possession, custody, or control of Pilot Travel. Plaintiffs chose a cutoff for their information which reflects the limits of what they believed reasonably accessible for them, and now argue that Pilot Travel must somehow concoct this data prior to 2005 because Plaintiffs could conveniently produce information back to 2002. Plaintiffs are in error.

    **A.**    **Pilot Travel Produced All Responsive Information It Possessed.**

Except in the most extraordinary circumstances, a party is obligated to collect and produce information only to the extent the information is in its possession, custody, or control. Fed. R. Civ. P. 34(a); *Bethel v. United States*, Civil Action No. 05-CV-01336-PSF-KLM, 2008 U.S. Dist. LEXIS 1680, at *11 (D. Colo. Jan. 2, 2008)(attached hereto as Exhibit P); *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 663 (D. Kan. 1999) (unsubstantiated allegation of "control" sufficient only if not contested). Information a party does not possess (or have custody of or control over) normally is not reasonably accessible and need not be produced.[1]

---

[1]     A party might be required to construct information that it did not possess where there has been a finding of spoliation and the information is essential to the case. *U.S. v. Kitsap Physicians Service*, 314 F.3d 995, 1001 (9th Cir. 2002) (duty to preserve does not pre-date

Pilot Travel collected and produced all reasonably accessible information. It included all of the relevant information in its possession. Pilot Travel possesses relevant information going back to 2005, and no further. That is as far back as the information in the possession, custody or control of Pilot Travel goes. There is no additional information which Pilot Travel retained. As a result, it cannot produce information about method of payment predating 2005. It would, therefore, be inappropriate for the Court to order production of documents or information which does not exist.

In 2005, Pilot Travel installed a new point of sale data system called ReMa, replacing a system involving Trendar and StorePoint. The level of transaction detail necessary for the method of payment discovery was not available in the old Trendar/StorePoint system but is available from the ReMa system. That is the information Pilot Travel produced. Under the previous point of sale system, Pilot Travel could not correlate card transaction dollar volumes with particular products as would be required to provide pre-2005 information concerning method of payment as called for here. Pilot Travel obtained the necessary level of transaction detail in mineable form with the installation of the ReMa system. Consequently, installation of ReMa marks the outer boundary for production of method of payment information by Pilot Travel. Moreover, as explained to Plaintiffs in May 2007, Pilot Travel has back-up information only to 2005. Thus, even assuming that back-up tapes covered the predecessor system (and after reasonable search, Pilot Travel does not believe such tapes exist), it would not permit production of relevant information for an earlier period.

Pilot Travel produced all of the information it had. It is not that Pilot Travel had information in February 2006 which it has since discarded. Pilot Travel has preserved all of the

litigation notice and therefore no possibility of spoliation for failure to preserve information destroyed as regular business practice before notice of litigation). Such is not the case here.

relevant information it had as of the filing of the lawsuit. Had the suit been filed in 2004 and the discovery request been made then, Pilot Travel could not have provided the requested information because it was not reasonably accessible. The information at issue here simply did not exist within Pilot Travel in any accessible form prior to installation of ReMa. That was one reason for installation of the ReMa system.

### B. Pilot Travel's Production Is Symmetrical To Plaintiffs' Production.

Pilot Travel produced all of the information which was reasonably accessible, which is to say here, all of the responsive information. There is no accessible source for this information which Pilot Travel has ignored or refused to search. It did what it promised to do. Plaintiffs do not claim to have done even that.

Plaintiffs do not claim to have loaded back-up tapes. They do not claim to have done any more than look to the live data on the relevant database. (To be sure, Plaintiffs have never actually described the process by which they collected information. It is possible that they did more than mine live data, but there is no reason to think so presently.) Thus, Plaintiffs did not do more than Pilot Travel did, to collect and produce responsive information.

Pilot Travel's production meets both the letter and the spirit of its duty to produce information. Both sides produced responsive information to the extent accessible, and that is the key metric. It is not the specific period that is determinative of whether one side or the other has carried an unfair burden, but whether each side has produced the responsive information it has. That is true here: both Pilot Travel and Plaintiffs produced the responsive information they had.

### CONCLUSION

Pilot Travel produced all of the relevant method of payment information in its possession, custody, or control. It provided the information in the agreed upon format, That is

what Pilot Travel had a duty to do, and what it did. There is no evidence that Plaintiffs (or TA) did anything more or different. Plaintiffs' motion, therefore, effectively asks the Court to order Pilot Travel to manufacture evidence, a step the Court should not take. Pilot Travel, therefore, respectfully requests that the Court deny Plaintiffs' motion.

DATED this 20th day of August, 2008.

> **HOWREY LLP**
> 170 South Main Street, Suite 400
> Salt Lake City, UT 84101
>
> **HOWREY LLP**
> 1299 Pennsylvania Avenue, N.W.
> Washington, DC 20004-2402
>
>
> By_____/s/ John H. Bogart_____
>   Attorneys for Defendants
>   Pilot Travel Centers LLC and Pilot Corporation

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of August, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification to the following:

Jonathan A. Dibble
jdibble@rqn.com
Justin T. Toth
jtoth@rqn.com
RAY QUINNEY & NEBEKER
36 South State Street, Suite 1400
Salt Lake City, UT  84111

Gregory J. Kerwin
gkerwin@gibsondunn.com
T. Michael Crimmins
mcrimmins@gibsondunn.com
K. Casey Lewis
klewis@gibsondunn.com
GIBSON, DUNN &
CRUTCHER LLP
1801 California Street, Suite 4200
Denver, CO  80202-2642

J. Gordon Cooney, Jr.
jgcooney@morganlewis.com
MORGAN LEWIS &
BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921

Brent O. Hatch
bhatch@hjdlaw.com
HATCH JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, UT  84101

/s/   Cathy M. Winkelman