**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**
**NORTHERN DIVISION**

| | |
|---|---|
| FLYING J INC., a Utah corporation, TCH LLC, a Utah limited liability company, TRANSPORTATION ALLIANCE BANK INC., a Utah corporation, and TON SERVICES INC., a Utah corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>TA OPERATING CORPORATION, now known as TA OPERATING LLC, a Delaware corporation d/b/a TRAVELCENTERS OF AMERICA; TRAVELCENTERS OF AMERICA, LLC; PILOT TRAVEL CENTERS LLC, a Delaware limited liability company, PILOT CORPORATION, a Tennessee corporation, and COMDATA NETWORK, INC. d/b/a COMDATA CORPORATION.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART MOTION TO COMPEL**<br><br>Case No. 1:06cv00030 TC<br><br>Honorable Tena Campbell<br><br>Magistrate Judge David Nuffer |

Plaintiffs' Second Motion to Compel Directed to Pilot Travel and Pilot Corporation with Respect to Plaintiffs' Second Set of Document Requests and Interrogatories is referred to the magistrate judge.[1]

## BACKGROUND

Plaintiff Flying J is a Utah corporation that owns or operates approximately 170 truck stops throughout the United States and Canada.[2] Plaintiff TCH is a Utah limited liability company owned in part by Flying J. It provides a transportation clearinghouse and trucker fuel cards to trucking companies, their drivers, and independent owner operators throughout the United States. TCH's trucker fuel card and all cards TCH processes compete with the Comdata

---

[1] Second Motion to Compel Directed to Pilot Travel and Pilot Corporation with Respect to Plaintiffs' Second Set of Document Requests and Interrogatories, docket no. 310, filed Apr. 9, 2008.

[2] First Amended Complaint ¶ 3, docket no. 286, filed Mar. 18, 2008.

Corporation ("Comdata") trucker fuel cards.[3] Plaintiff Transportation Alliance Bank ("TAB") is a Utah corporation wholly owned by Flying J that provides financial products and services.[4] Plaintiff TON Services ("TON"), a Utah corporation, is a wholly owned subsidiary of Flying J that provides transportation related services and products.[5]

Defendant Pilot Travel Centers LLC is a Delaware limited liability company owned, in part, by Defendant Pilot Corporation, a Tennessee corporation. These two entities (collectively, "Pilot") own and operate over 280 truck stops/travel centers in the United States.[6]

Plaintiffs claim Defendants engaged in an unlawful conspiracy to prevent the TCH Trucker Fuel Card from competing with Comdata's card and to suppress competition in the market for trucker fuel cards.[7]

Plaintiffs served Pilot with their Second Set of Interrogatories and Second Set of Requests for Production of Documents on October 8, 2007 and October 5, 2007, respectively. On December 11, 2007 Pilot responded to the interrogatories[8] and on November 8, 2007, Pilot responded to the document requests.[9] Plaintiffs were not satisfied with Pilot's responses and the parties have twice met (in February and March 2008) in an attempt to reach an agreement about the disputed discovery requests, but have not been able to resolve the issues. [10] Plaintiffs filed

---

[3] *Id*. ¶ 4.

[4] *Id* ¶ 5.

[5] *Id.* ¶6.

[6] *Id.* ¶ 9.

[7] *Id.*¶ 1.

[8] Responses to Plaintiffs' Second Set of Interrogatories to Defendants Pilot Travel Centers LLC and Pilot Corporation (Interrogatory Responses) attached as Exhibit B to Plaintiffs' Memorandum in Support of Their Second Motion to Compel Directed to Pilot Travel and Pilot Corporation with Respect to Plaintiffs' Second Set of Document Requests and Interrogatories (Supporting Memorandum), docket no. 311, filed Apr. 9, 2008.

[9] Response to Plaintiffs' Second Set of Requests for Production of Documents to Defendants Pilot Travel Centers LLC and Pilot Corporation (Production Responses) attached as Exhibit D to Supporting Memorandum.

[10] Supporting Memorandum at 3–4.

this motion to compel the production of information and documents they believe are central to development of evidence.

## DISCUSSION

### Interrogatories

<u>No. 7</u>

In interrogatory No. 7 Plaintiffs ask Pilot to describe any instance since January 1, 2000 in which Pilot or an affiliated company has marketed or studied the possibility of marketing their own fuel cards to truck drivers or fleets.[11] The request identifies the level of detail that Pilot's response should include with a list of descriptors.[12]

Pilot interprets the request as asking about individual solicitations - for "each instance in which Pilot has offered a trucker fuel card to a truck driver"[13] - rather than as a question about overall marketing. Pilot therefore objects that the request is overly broad, burdensome and irrelevant to the claims and is not reasonably calculated to lead to the discovery of admissible evidence. It argues that because application forms for the cards are available on the Internet, Plaintiffs can't reasonably expect Pilot to know which truck drivers have attempted to obtain an application for its cards. Pilot then asserts that the interrogatory is intended to harass Pilot, to which it also objects. Finally, Pilot objects because the interrogatory draws legal or factual conclusions about the definition of relevant antitrust markets. Pilot provides links to two Web pages from which it says Plaintiffs can derive the information they seek.[14]

---

[11] Supporting Memorandum at 6.

[12] Plaintiffs' Second Set of Interrogatories to Defendants Pilot Travel Centers LLC and Pilot Corporation (Interrogatories) at 3, attached to Supporting Memorandum as Exhibit A.

[13] Interrogatory Responses at 3.

[14] Interrogatory Responses at 4–5.

Plaintiffs respond that the links do not provide the information listed.[15] A quick check of the internet links verifies this claim:  each page very briefly describes a certain card's features and provides a link to an application for that card.

Pilot also says it will describe in detail its offerings after January 1, 2000,[16] and follows up this promise in its opposition memorandum.[17]  But as Plaintiffs point out, as of the reply memorandum on this motion, no further response has been made.[18]


No. 8

This interrogatory asks Pilot to describe instances known to fifteen named Pilot employees in which those Pilot employees, agents or representatives have discussed the acceptance or non-acceptance of the TCH card or any card processed over TCH's platform with any employee, agent or representative of Comdata, TA, Petro, or Love's.[19]

Pilot's objections begin with objections to breadth, burden, clarity, and relevancy of the information. It then objects because it claims the information is immune from discovery under attorney-client and work product privileges. Lastly, Pilot contends that the interrogatory constitutes not just one, but "at least fifteen separate and discrete subparts because it inquires about the individual knowledge of fifteen separate individuals regarding discussions on a topic with representatives of each of four different entities."[20] Pilot asserts that Plaintiffs have asked

---

[15] Supporting Memorandum at 7.

[16] Interrogatory Responses at 5.

[17] Memorandum in Opposition to Plaintiff's Motion to Compel with Respect to Second Set of Document Requests and Interrogatories (Opposition Memorandum) at 5, docket no. 334, filed May 5, 2005.

[18] Plaintiffs' Reply Memorandum in Support of their Second Motion to Compel Directed to Pilot Travel and Pilot Corporation with Respect to Plaintiffs' Second Set of Document Requests and Interrogatories (Reply Memorandum) at 5, docket no. 359, filed May 27, 2008.

[19] Interrogatories at 3–4.

[20] Interrogatory Responses at 6-7.

multiple interrogatories in No. 8 because "each subpart is fully answerable without reference to the other subparts" since each of the fifteen individuals could provide his knowledge of the subject without reference to any of the other fifteen individuals.[21]

In support of their counting method, Plaintiffs argue that in a complex case, it is reasonable to ask the Defendant to interview a small group of employees to collect important information on a topic central to the case, and that this method of gathering information before deposing individuals is a judicious use of interrogatories.[22] Plaintiffs add that the listing of fifteen specific employees actually benefits Pilot and reduces the burden that may have been imposed by a more general interrogatory about communications between Pilot and its competitors.[23] Plaintiffs endorse a common-theme/subject-based approach to counting, citing a Utah District Court opinion and several secondary sources to stand for the proposition that interrogatories with several subparts properly count as a single interrogatory when those interrogatories do not seek information about discrete separate subjects.[24]

In opposition to the motion, Pilot argues for a primary-question approach. It rejects the common-theme approach because it argues that it will almost never produce separate subparts since all subparts share a theme with the primary question.[25] It urges the Court to adopt the approach from a Nevada District Court that separates the "primary question" and "discrete subparts" by asking whether subsequent questions are "logically or factually subsumed within"

---

[21] Opposing Memorandum at 12.

[22] Supporting Memorandum at 11.

[23] *Id.* at 11-12.

[24] *Id.* at 12–13 (citing *Cubas v. Sky Chefs, Inc.*, No. 2:04-CV-01099TS, 2006 U.S. Dist. LEXIS 19545, at *17–18 (D. Utah April 10, 2006)).

[25] Opposing Memorandum at 10 (citing *Dimitrijevic v. TV&C GP Holding Inc.*, Civil Action H-04-3457, 2005 U.S. Dist. LEXIS 41399 at *5 (S.D. Tex. Aug. 24, 2005)).

the primary question.[26] If the subsequent question can stand independent of the first, it is a

discrete subpart.[27]

      The court agrees with Plaintiffs' analysis. Rule 33(a) limits the interrogatories a party

may serve, including all "discrete subparts." The Advisory Committee Notes on the 1993

amendments explain that parties cannot evade this limitation by joining as "subparts" questions

that seek information about "discrete separate subjects."[28] A review of the cases upon which

Pilot relies shows that they are not appropriate analogs for this case. Those disputes involved

interrogatories in which two separate questions were included in each interrogatory.[29] The

second question often introduced a new topic of inquiry. Plaintiffs have directed a single

question, targeted to 15 identified individuals.


No. 9

Here Plaintiffs seek a detailed description about the process by which Pilot provides Comdata

with pricing information that Comdata then quotes to trucking companies or truck fleets for

pricing goods or services Pilot sells to long-haul truck drivers.[30] Pilot objects to the interrogatory

due to breadth, redundancy, ambiguity, and relevance, and enters an objection about the number

of interrogatories, cautioning that this one brings the total number to at least twenty-nine.[31]

However, its main objection is that it calls for information not relevant to the claims or defenses

---

[26] Opposing Memorandum at 10–11 (citing *Kendall v. GES Exposition Servs., Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997)).

[27] Opposing Memorandum at 11.

[28] Fed. R. Civ. P. 33, 1993 Advisory Committee Notes to Subdivision (a).

[29] In *Dimitrijevic*, thirteen numbered interrogatories and 122 separately lettered subparts often introduced different topics or parties.

[30] Interrogatories at 4.

[31] Interrogatory Responses at 8–9.

in this case[32] because "price fixing" is not alleged in the Complaint.[33] Pilot thus ignores the fact that the focus of the interrogatory is on the means of communication about "pricing information" and not about the actual price information. The subject matter of this interrogatory (which does not mention "price-fixing," but "seeks basic information about Pilot's business including information necessary to show how Pilot and Comdata have interacted with each other in a way that has harmed competition"[34]) is relevant to the claims in this lawsuit.

Pilot has agreed to produce the information requested,[35] but had not done so by the time this motion was fully briefed.


No. 10

This interrogatory is closely tied to Plaintiffs' inquiry about price communications from Pilot to Comdata. Here Plaintiffs ask for a description of each instance in which Comdata has told Pilot representatives about price quotes Comdata received from Pilot's competitors, TA, Petro or Love's.[36] After entering objections to the breadth, clarity, and duplicative nature of the interrogatories, Pilot objects that the information sought is irrelevant since, it argues, "Plaintiffs' claims to not relate in any way to pricing."[37] In discussions with Plaintiffs' counsel, Pilot further objected because the request would require Pilot to interview many of its employees.[38]

---

[32] Opposition Memorandum at 7.

[33] *Id.* at 6–7.

[34] Supporting Memorandum at 9.

[35] *Id.* at 9; Opposing Memorandum at 6, 8.

[36] Interrogatories at 4.

[37] Interrogatory Responses at 9.

[38] Supporting Memorandum at 14.

Pilot also warned that Plaintiffs are close to the maximum number of interrogatories they may serve and that Pilot will not hesitate to object once that limit is reached.[39] Pilot now states that its objection to No. 10 is not the counting of interrogatory sub-parts.[40]

Plaintiffs contend that the information sought is directly relevant to the conspiracy allegations because sharing pricing information harms competition and supports a "per se" analysis of the boycott.[41] Communication between competitors on something as central as pricing is relevant to the claims in the lawsuit, and just as Pilot's communications to Comdata are relevant, so is Comdata's transmission of such information to Pilot regarding others in the marketplace.

<u>No. 11</u>

This interrogatory asks for a description of instances in which ten Pilot employees communicated with five Comdata employees about TCH, the TCH card, Flying J, Phil Adams (CEO of Flying J) or Irving Oil.[42] Pilot's response includes objections about breadth, burden, relevance, and clarity, but focuses on the counting of subparts. Pilot argues that the interrogatory consists of at least ten separate subparts "because it inquires about instances in which ten separate individuals engaged in conversations with five separate individuals about five different subjects,"[43] bringing the total number to the agreed upon maximum. Pilot's logic would really result in counting it as 250 interrogatories.

---

[39] Interrogatory Responses at 10.

[40] Opposing Memorandum at 14–15.

[41] Supporting Memorandum at 14.

[42] Interrogatories at 5.

[43] Interrogatory Responses at 11.

Pilot then states the terms on which it will respond. Pilot agrees to describe instances of the ten Pilot employees, *acting within the scope of their agency or employment* communicating with the five Comdata employees, *acting within the scope of their agency* about *cards processed over the TCH platform*, Flying J or Phil Adams.[44] Plaintiffs complain that agency language "sounds like it is intended to give Pilot subjective discretion to not report about actions that it chooses to disclaim as unauthorized."[45] Indeed it does.

Pilot provides the Bates numbers for thirteen documents from which it says Plaintiffs can derive the identity of individuals who had the described communications and the nature of those communications since the burden of derivation is the same for both parties.[46] Plaintiffs state that the documents referenced do not provide the information sought and that after the parties conferred on the issue, Pilot's counsel stated that it would not respond further until the counting issue is resolved.[47] Plaintiffs contend that Pilot's counting method is strained and that its own method of seeking information through interrogatories is efficient.[48]

Pilot challenged Plaintiffs' method and argues that the interrogatory consists of at least ten subparts because the request seek specific[49] information, and "[r]esponses for each of the ten (10) Pilot Defendant employees can be provided without providing any information at all about the other nine (9) employees, thus indicating the subparts are discrete."[50]

---

[44] Interrogatory Responses at 11.

[45] Supporting Memorandum at 15.

[46] Interrogatory Responses at 11–12.

[47] Supporting Memorandum at 16.

[48] *Id*.

[49] Opposing Memorandum at 18–19.

[50] Opposing Memorandum at 18 (citing *Kendall v. GES Exposition Servs., Inc.,* 174 F.R.D. 684, 685 (D. Nev. 1997)).

Plaintiffs' method lists particular names and particular subjects.  This is more efficient and directed than a blanket request for all communications between anyone at Pilot and all other persons. Rather than impose a burden on Pilot, Plaintiffs narrow their request in a way that helps identify specific individuals and subjects, which advances the search for information. Pilot objects that these specifications fracture the interrogatory into parts, saying that it no longer is "general," but now is "specific."[51] Pilot's method of analysis is rejected. Parties should be encouraged to be specific in discovery.

Pilot also will not be permitted to winnow its responses to those communications it unilaterally determines to be within the scope of someone's agency.[52] And similarly, Pilot's attempt to redraft the interrogatory to change the requested five subjects to three is ill-advised.[53] Pilot might be right from its perspective about some advantages in its proposed language, but Plaintiffs are asking the questions.


No. 12

This interrogatory seeks periodic summary information on all fees Pilot has paid to Comdata or that Comdata has paid to Pilot, with a description of the fee, the name of the payor, the per unit amount of the fee (e.g., 30 cents/transaction), and a reference to  the agreement providing for the fee.[54] Pilot responds that the information sought is irrelevant to the claims or defenses in the case;[55] that the interrogatory violates the Rule 16 agreement of August 2007[56],

---

[51] Opposing Memorandum at 18-19

[52] Pilot makes no argument on this point in its memorandum on the motion.

[53] See Opposing Memorandum at 15-17.

[54] Interrogatories at 5.

[55] Interrogatory Responses at 12.

[56] *Id.* at 13.

and that the interrogatory consists of at separate subparts.[57] Pilot says there are at least two parts because the interrogatory asks about payments from Pilot to Comdata and then about payments from Comdata to Pilot (one for each direction of payment), and then two other subparts exist because the interrogatory seeks documentation of agreements for such payments.[58]

The Rule 16 agreement "does not apply to document requests and interrogatories which may be served" after its date.[59]   These interrogatories were served October 8, 2007,[60] after the August 17, 2007 date the agreement was executed.

Pilot also argues that finding the data to respond to No. 12 will require compiling information from corporate financial databases, and claims the parties have agreed that information from corporate databases will be delayed.[61]   While the parties refer broadly to a prohibition against production of material from "corporate databases,"[62] neither has cited specific language in the document. The magistrate judge has reviewed the agreement,[63] and does not see a barrier to production of materials responsive to these specific queries, certainly not in the terms referenced by the parties.

Pilot argues this information is not relevant, and that the only financial issue is the transaction fee Comdata charges Pilot.[64] But this fee cannot be considered in isolation. The financial substance of the relationship must be known.[65] The nature, grounds and magnitude of

---

[57] *Id.*

[58] Opposing Memorandum at 23-24.

[59] Docket no. 156, at 2, filed August 17, 2007.

[60] Interrogatories at 7.

[61] Opposing Memorandum at 22, 24.

[62] *Id.* at 22*; Reply Memorandum at 16.

[63] Docket no. 156, filed August 17, 2007.

[64] Opposing Memorandum at 20-21.

[65] Supporting Memorandum at 17-18.

the financial relationship between Pilot and Comdata is very important to this case and that information is sought in this interrogatory.

## Document Requests

<u>No. 51</u>

Plaintiffs request all documents concerning any communications between Pilot or any employee, representative and/or agent of Pilot and any employee, representatives and/or agent of any current, former, or potential Pilot-licensed truck stop about Flying J, TCH, or any card processed over the TCH platform.[66] Pilot limits its response by stating it will produce communications pertaining to only "current or former" (leaving out "potential") "Pilot Travel trademark licensees  . . . acting within the scope of their agency or employment" that concern "Flying J, TCH, or cards processed over the TCH platform."[67] Pilot stated that it had already produced any responsive documents in its possession.[68]

Pilot contends that it is impossible to define all potential licensees and that the commercial sensitivity of relevant business negotiations (possible interference with ongoing negotiations) outweighs any interest Plaintiffs may have in discovering the information.[69] Pilot adds that it has offered to produce responsive documents for entities with whom Pilot has already concluded negotiations.[70]

---

[66] Plaintiffs' Second Set of Requests for Production of Documents to Defendants Pilot Travel Centers LLC and Pilot Corporation (Requests) at 3, attached as Exhibit C to Supporting Memorandum.

[67] Response to Plaintiffs' Second Set of Requests for Production of Documents to Defendants Pilot Travel Centers LLC and Pilot Corporation (Request Responses) at 7, attached as Exhibit D to Supporting Memorandum.

[68] *Id.*.

[69] Opposing Memorandum at 46-47.

[70] *Id.* at 47–48.

On balance, the magistrate judge agrees that the relative potential harm and interference that could arise from production relating to on-going negotiations is greater than the benefit to be received from those potential licensees.  As those licensees pass from *prospective* to *licensed* status, or when negotiations cease without consummation of an agreement, the information will be provided as part of the duty to supplement.

No. 54

Document Request No. 54 seeks all documents concerning any communication with, directive to, or agreement with any Pilot-licensed truck stop concerning Irving Oil fuel cards. Pilot argues that the request is duplicative of other requests that seek communications between Pilot and their licensees regarding Flying J, TCH, or any fuel card processed over the TCH platform.[71] Pilot also argues that Plaintiffs can't identify any additional information they would gain from this request not already produced.[72] Pilot also objected because the term "Irving Oil fuel cards" is vague, though this objection is now resolved.[73] And the parties agree transaction-specific data is not included.[74]

Pilot states that it will produce documents "that concern the acceptance and/or non-acceptance at Pilot Travel trademark licensees of 'Irving Oil fuel cards'"[75]  It hopes to avoid producing volumes of data concerning processing Irving Oil fuel cards from the time when Pilot accepted those cards.[76] The magistrate judge agrees that ministerial transmittals about Irving Oil

---

[71] *Id.*  at 48, citing to Requests Nos. 49, 50, and 51.

[72] Opposing Memorandum at 48–49.

[73] Opposing Memorandum at 48.

[74] Reply Memorandum at 35.

[75] Request Responses at 9; *see* Opposing Memorandum at 48.

[76] Opposing Memorandum at 48.

fuel cards should not be produced. And Pilot's limitation appears to avoid this result while still embracing substantive "communications, directives to, or agreements" [77] with Pilot Travel trademark licensees on the subject of Irving Oil fuel cards.


No. 56

This request asks for all documents that concern Mark Hazelwood's trip to Jacksonville as referred to in Mike Hinderliter's 2003 e-mail (attached as Exhibit 5 to Complaint and First Amended Complaint).[78] Pilot responded that it would "produce expense accounts, expense records, reimbursement records"[79] but failed to recite that they would produce "all documents, including . . . notes, and/or memos . . . ."[80]

Defendants respond by entering objections regarding breadth, ambiguity, burden, and duplicate nature of requests. Pilot's response committed to producing any documents concerning any trip by Hazelwood to Jacksonville, Florida in April 2003, but stated during the meet and confer process that they believe they have already produced notes, memos, expense records[81] and any other relevant documents.[82]

> During the meet and confer process with respect to Request No. 56, counsel for the Pilot Defendants explained as much, noting they were confident "notes and memos," if any, had already been produced and were thus excluded from the response to Request No. 56 as duplicative.[83]

---

[77] Supporting Memorandum at 35.

[78] Requests at 4.

[79] Request Responses at 10.

[80] Requests at 4.

[81] Opposing Memorandum at 49.

[82] Request Responses at 10.

[83] Opposing Memorandum at 49.

"Plaintiffs will accept what they perceive now to be Pilot's unqualified commitment to produce all documents responsive to Request No. 56, as written by Plaintiffs."[84]


No. 57

This request requires Pilot Defendants to produce the office and cellular telephone records of seven named Pilot employees or to deliver signed authorization to seek the records from its telephone service providers if Pilot does not have the records.[85] Pilot responds by asserting that the request would shift the burden of discovery to Pilot because it would be required to obtain documents from third parties not under Pilot's control.[86] Pilot maintains that the request requires them to "obtain information and create records that they do not maintain in the ordinary course of business" and which "do not exist at either Pilot Travel or Pilot Corp."[87] It notes that it will consider executing an authorization if one becomes necessary.[88] Pilot admits that it would refuse to answer an interrogatory requesting identification of its phone service providers.[89]

This request is not extreme or unduly burdensome to Pilot. Pilot may refuse to obtain the records, but then should provide authorization to Plaintiffs to obtain the records from Pilot's service providers so that Plaintiffs may access the records. If the authorization is ineffective, the court may order that Pilot obtain and produce the records.

---

[84] Reply Memorandum at 35.

[85] Requests at 4–5; Supporting Memorandum at 21.

[86] Request Responses at 11.

[87] Opposing Memorandum at 29.

[88] Request Responses at 11–12.

[89] Opposing Memorandum at 30-31.

No. 61

      This request calls for the production of all documents concerning communications between Pilot Travel/Pilot Corp. and Ryan Ramey since Mr. Ramey left his position as Pilot Corp.'s sales director.[90] Plaintiffs assert that the requested communications are relevant because Mr. Ramey was "directly involved in working with Pilot to punish Irving Oil for its decision to move its card processing business to TCH"[91] Pilot's response included objections to the breadth, burden, and relevance, and a statement that it would produce communications between Pilot and Mr. Ramey that concern Flying J, TCH, or cards processed over the TCH platform, but that Pilot believed that any such documents had been produced.[92]  Plaintiffs claim that Pilot's re-writing of the request substantially limits its scope.[93] Pilot responds that the language it provides "limits the request to any documents that could possibly relate to Plaintiff's allegations."[94]

      Pilot's limitation of the request to communications between Pilot and Mr. Ramey that concern Flying J, TCH, or cards processed over the TCH platform is reasonable.  All communications with Ramey would not be relevant.


No. 62

      Here Plaintiffs request that Pilot Defendants:

Produce all documents *concerning* communications with Comdata *regarding* bids and/or proposals by Comdata to truck fleets in which it is or was *anticipated* that Comdata *would submit* to truck fleets quotes *on behalf of* truck stops or truck stop chains for pricing or discounts on goods or services.[95]

---

[90] Requests at 6.

[91] Supporting Memorandum at 36.

[92] Request Responses at 14–15.

[93] Supporting Memorandum at 36.

[94] Opposing Memorandum at 50.

[95] Requests at 6 (emphasis added).

Pilot objects to the "largely incomprehensible"[96] wording of the request, which the court has emphasized in agreement. However, the briefing process has clarified Plaintiffs' intentions.

Pilot says it will produce any documents that have not already been produced "concerning pricing or discounts on *diesel fuel* offered by Pilot Travel or Pilot Corp. to truck fleets *that are administered by Comdata* upon receipt of a more particularized and comprehensible Request."[97]

Pilot substitutes the words "diesel fuel" for "goods or services" because they "are not aware of such discount networks being administered with respect to other 'goods or services.'"[98] It would be better for Pilot to make that statement in response, rather than modify the request and then clarify in the process of resolving the dispute.

Pilot also introduces the phrase "truck fleets administered by Comdata."  This might be an improvement, but it is hard to tell.  It has the same defect as the original request in being a dependent phrase without clear indication of dependency.

Plaintiffs' other grievance with Pilot's response is Pilot's limitation to *completed deals* instead of all price quotes to potential customers and to *deals Comdata administers* instead of those in which Pilot may provide the concession directly to the fleet.[99]  In this instance, the communications regarding potential transactions could be very important and may reveal more of a pattern of activity than merely completed transactions.

Based on the reading of the memoranda, it seems that Plaintiffs are attempting to ask the following:

---

[96] Request Responses at 15.

[97] Request Responses at 16 (emphasis added).

[98] Opposing Memorandum at 52.

[99] Supporting Memorandum at 37.

> Produce all documents concerning communications with Comdata regarding bids and/or proposals made or to be made by Comdata to truck fleets on behalf of truck stops or truck stop chains, if those bids or proposals included or were to include quotes for pricing of or discounts on goods or services.

If Plaintiffs within ten days affirm that this is a correct reading, Pilot will be required to respond within twenty days thereafter.

No. 63

This request reads: "Produce all documents evidencing non-transactional communications with, *or regarding,* Comdata Corporation or Comdata Network, Inc."[100] Pilot responds with objections concerning breadth, but states that it will produce documents that "concern non-transactional communications with Comdata . . . regarding the processing of fuel cards or payment for diesel fuel."[101]

Plaintiffs contend that Pilot's omission of the phrase "or regarding" and addition of the limitation that the relevant subject matter be processing of fuel cards or payment for fuel is improper because all of Pilot's communications regarding Comdata (as an alleged co-conspirator) are central to this case.[102] Pilot indicates that it has agreed to reinstate the phrase "or regarding"[103] and Plaintiffs accept,[104] so the remaining issue is the limitation to processing of fuel cards or payments for fuel.

Pilot argues that by rejecting the limitation, Plaintiffs would be allowed to expand the bounds of the case without a proper foundation in the allegations.[105] Plaintiffs respond that all

---

[100] Requests at 6 (emphasis added).

[101] Request Responses at 16.

[102] Supporting Memorandum at 33.

[103] Opposing Memorandum at 45.

[104] Reply Memorandum at 32.

[105] Opposing Memorandum at 46.

non-transactional communications with or regarding Comdata may lead to admissible evidence because the allegations about the nature and scope of the conspiracy are not limited to the processing of fuel cards and payments for diesel fuel and argue that they should not have to identify all subjects on which improper communications have occurred to obtain discovery.[106] Plaintiffs point out that the court ordered Plaintiffs to respond to a similarly unlimited request by Pilot.[107]

Pilot has regular and considerable dealings with Comdata. Plaintiffs do not. The volume of communication between Pilot and Comdata would greatly exceed the volume of communications between Plaintiffs and Comdata. Pilot should produce all documents evidencing non-transactional communication regarding the processing by Comdata Corporation or Comdata Network, Inc. of fuel cards or payment for diesel fuel.

No. 65

This request calls for the production of any document that relates or refers to any meeting a Pilot representative attended with a representative of any of its competitors (including TA, Petro, and/or Love's).[108] Pilot responded with general objections and then stated that it would produce any document that concern meetings by "senior employees and agents of Pilot . . . acting within the scope of their agency . . . with employees and agents of any truck stop company . . . above the level of truck stop manager acting within the scope of their agency . . . concerning the acceptance of fuel cards."[109] It then stated that it had already produced any such documents.

---

[106] Reply Memorandum at 32–33.

[107] Supporting Memorandum at 33, referring to Memorandum Decision and Order Granting in Part Motion to Compel, docket no. 142, filed July 30, 2007.

[108] Requests at 6–7.

[109] Request Responses at 17-18.

The Plaintiffs agreed to exclude employees who work at individual truck stops,[110] but object to the narrowing of the request to senior employees acting within the scope of their agency or employment while attending meetings concerning the acceptance of fuel cards. Plaintiffs argue that the new language would exclude "some Pilot sales people whom Plaintiffs believe (based on evidence already obtained) are likely to have participated in such meetings."[111] It seems logical that sales people, not in management, could have prime motivation to participate in discussions about Plaintiffs' operations. Plaintiffs further argue that the limitation to employees acting within their scope of employment should also be rejected based on a previous ruling by the Court that employees' "ability to bind their employer has no bearing on the issue of whether they might have information relevant to the alleged conspirators' use of trade shows or meetings to further the conspiracy."[112] As suggested before in this order, an agency limitation allows a responding party to filter information in a subjective way. Pilot Defendants argue that searching beyond senior management and sales personnel would be burdensome and unlikely to result in useful information.[113]

While "[a]ny meeting between Pilot and its competitors poses the risk of collusion,"[114] this does not mean that such risks of collusion are pertinent to this case. Plaintiffs' agreement to exclude employees of single truck stops is sufficient to narrow this legitimate inquiry into significant communications with competitors, and a limitation to communications regarding acceptance of fuel cards, the TCH card, TCH or Flying J should focus the responses.

---

[110] Supporting Memorandum at 38.

[111] *Id.*.

[112] Memorandum Decision and Order Granting Motion to Compel at 10–11, docket no. 141, filed July 30, 2007 (cited in Supporting Memorandum at 38).

[113] Opposing Memorandum at 54.

[114] Supporting Memorandum at 38.

<u>Nos. 66 & 67</u>

These two requests seek data from Pilot's corporate databases that track interactions between Pilot sales employees and customers and that track customer complaints containing specific search terms that may relate to refusals to accept TCH cards.[115] Pilot responded that ongoing discussions about production of electronically stored information prevent it from having to respond at this time.[116] Plaintiffs argue that Pilot has disregarded the parties' agreement[117] to defer certain "transactional" discovery by seeking to compel the production of documents from Plaintiffs' electronic databases.[118]

The parties again refer to a prohibition against production of material from "corporate databases,"[119] but again neither has cited specific language in the document.[120] The magistrate judge does not see a barrier to production of materials responsive to these specific queries.

In light of the focused nature of these requests, which heightens their likelihood of yielding beneficial information, the Court requires Pilot to respond.

<u>No. 70</u>

No. 70 calls for all documents that concern any instance in which Comdata has sought to enforce a "most favored nations" or similar clause in any contract with Pilot, including one

---

[115] *Id.* at 23.

[116] Opposing Memorandum at 32-33.

[117] Docket no. 156, filed August 17, 2007.

[118] Supporting Memorandum at 23–24 (citing documents filed with regard to Memorandum Decision and Order Granting in Part Motion to Compel, docket no. 338, filed May 7, 2008).

[119] Opposing Memorandum at 32; Supporting Memorandum at 23.

[120] Docket no. 156, filed August 17, 2007.

specific instance relating to a suit Comdata filed in Tennessee state court.[121] This clause requires those using Comdata's services to pay no less to Comdata than they pay to other service providers. (Defining the clause consumes 7 lines of the request, while referencing it to existing litigation by Comdata against Pilot consumes another 6 lines.

Pilot objects that the request shifts the discovery burden to Pilot by forcing it to seek information from third parties[122] because it would have to investigate Comdata's litigation practices.[123] Pilot also asserts that this request is duplicative because it would be covered by requests calling for *communications* with Comdata.[124] But Pilot does not offer to produce any documents on this subject which is at issue in a lawsuit in which it is involved.

"Documents concerning any instance" is broader than "communications," so the request is not duplicative. Pilot is not required to request documents from third parties over which it has no control, but obviously as it is defendant in Comdata's suit, Pilot's lawyers should have many documents. And if Pilot has the responsive documents, it needs to provide them, regardless of their availability through a public source.

No.71–73

In these requests Plaintiffs seek documents concerning communications among Pilot's lawyers and any of the lawyers for the alleged co-conspirators Comdata (No 71), Petro (No. 72), and TA (No. 73),  that relate to Flying J, TCH, the TCH card, this lawsuit, the claims asserted in this lawsuit, or Plaintiffs' subpoena issued to Comdata in this lawsuit.[125] Nos. 72 and 73 seek

---

[121] Requests at 8; *see also* Supporting Memorandum at 24.

[122] Request Responses at 22.

[123] Opposing Memorandum at 33.

[124] *Id.* at 34.

[125] Requests at 8–10.

information about communications from the date Plaintiffs suggest the boycott began[126] (January

1, 1996) to the date this lawsuit was filed (February 28, 2006),[127] but No. 71 is not so limited

because Comdata was only recently added as a Defendant (March 18, 2008).[128]

After entering general objections, Pilot objects to all three requests on the grounds that

there is no legitimate basis for the requests and that they improperly seek documents immune

from discovery under the joint defense privilege since Plaintiffs allege in this case that Pilot is

engaged in a conspiracy with each of its three named competitors.[129] Plaintiffs argue that

discovery of the communications are necessary to understand the nature and breadth of The

Conspiracy.[130] Pilot responds that Plaintiffs' explanation is speculative and because an obvious

common interest exists, Plaintiffs should shoulder the burden in seeking to pierce the

privilege.[131]

Plaintiffs argue that Pilot has not demonstrated the existence of a joint defense privilege

nor has it defined the time frame and scope of the privilege it asserts.[132] It argues that to establish

the existence of the privilege, Pilot must show that (1) the documents were made in the course of

a joint-defense effort; (2) the documents were designed to further that effort;[133] and the proof

must include evidence of an express or implied joint defense agreement.[134] With respect to the

---

[126] Supporting Memorandum at 26 (citing Memorandum Decision and Order in Part Granting Motion to Compel at 29, docket no. 142, and the parties' August 17, 2007 Rule 16 agreement, docket no. 156 at 3).

[127] Supporting Memorandum at 25.

[128] *Id.* at 25.

[129] Request Responses at 22-23, 24, 25.

[130] Supporting Memorandum at 25–26.

[131] Opposing Memorandum at 38–39.

[132] Supporting Memorandum at 25.

[133] Supporting Memorandum at 26 (citing *In re Grand Jury Proceedings v. United States*, 156 F.3d 1038, 1043 (10th Cir. 1998)).

[134] Supporting Memorandum at 26 (citing *In re Grand Jury Proceedings* and *In re Qwest Commc'ns. Int'l.* 450 F.3d 1179, 1195 (10th Cir. 2006)).

timing of the privilege, Plaintiffs argue that Nos. 72 and 73 seek information about communications prior to the lawsuit so Pilot cannot claim that the lawsuit gave rise to the privilege.[135] It also cannot claim a privilege with Comdata before Comdata was added.[136] If the privilege indeed exists, Plaintiffs argue, Pilot needs to produce evidence of the joint defense agreement and that Pilot also needs to produce a privilege log to establish whether the assertion of privilege is proper.[137] Because Pilot has failed to support a privilege claim, Plaintiffs argue, the Court should order the production of all documents responsive to the requests.[138]

In defense of its position, Pilot asserts that and that the privilege clearly exists since defendants in the case have common allegations and claims asserted against them and may face joint and several liability from Plaintiffs' claims.[139]  According to Pilot, the common interest privilege exists even without a written agreement,[140] but it states that Defendants have "memorialized their common interest relationship" and are willing to provide the court a copy for in camera review.[141]

Pilot argues that a common interest exists among *potential* codefendants as soon as there is a "palpable threat of litigation at the time of the communication."[142] It then claims that its common interest privilege with TA arose in November 2005 when, in a previous lawsuit, [143]

---

[135] Supporting Memorandum at 28.

[136] *Id.* at 27.

[137] *Id.* at 26, 28; Reply Memorandum at 25.

[138] Supporting Memorandum at 28.

[139] Opposing Memorandum at 34–35.

[140] Opposing Memorandum at 36 (citing *Carbajal v. Lincoln Benefit Life Co.,* No. 06-cv-00884-EWN-KLM, 2007 WL 3407345, at *4-5 (D. Colo.  Nov.  13, 2007)).

[141] Opposing Memorandum at 36.

[142] *Id.* at 38 (quoting 6 *Moore's Federal Practice* § 26.49[5][b] (Matthew Bender 3d ed.)).

[143] *Flying J Inc. v. TA Operating,* 1:04-CV-00177-BSJ (D. Utah).

Plaintiffs informed TA they would add Pilot as a defendant in the case.[144] Pilot argues that its common interest with Comdata was created at least at the time this suit was filed, not just when Comdata was named a codefendant because the Complaint gave Comdata notice that Plaintiffs were investigating claims against it.[145] It is unclear from Pilot's memorandum at what point it asserts the privilege arose for Petro, but Pilot seems to claim the privilege arose for all defendants in November 2005.[146] It claims no privilege for communications before that date, but does not believe that any relevant documents exist before then since outside counsel for Pilot had not been retained at that point.[147]

Pilot disagrees about the appropriateness of a privilege log[148] and argues that such a request is inappropriate given an agreement reached by the parties that communications with clients would not need to be logged for the period of the litigation and that general privilege logs would follow completion of the production from custodians.[149] If this reference is to Section 5 of the Rule 16 Status Report,[150] which was made August 17, 2007, that reference is unavailing since future discovery requests were excluded from its application. If the reference is to another agreement, it has not been brought to the court's attention.

---

[144] Opposing Memorandum at 38.

[145] *Id.* at 37-38.

[146] *Id.* at 38. "A common interest among the Defendants arose as soon as Plaintiffs indicated in the prior Wi-Fi litigation against TA that they were preparing to amend the complaint in that case (to add the claims asserted here)."

[147] *Id.* at 38.

[148] *Id.* at 39.

[149] *Id.* at 40.

[150] Rule 16 Status Report Concerning Certain Discovery Issues at 6, docket no. 156. This section reads: "The parties agree that each may defer the preparation of privilege logs until they complete their document production for all documents responsive to the opposing party's first set of document requests, and that doing so will not waive any applicable privilege." The agreement also reads, at 2: "[T]his Rule 16 Report . . . does not apply to document requests and interrogatories which may be served in the future."

The information sought in Nos. 71–73 is relevant and, except for valid privilege, discoverable. The party asserting a joint defense privilege shoulders the burden of establishing its existence.  Pilot will produce any joint defense agreement for in camera review, and the court will then determine for what periods a privilege log will be required.

No. 77

Request No. 77 calls for the production of all documents concerning thirteen Pilot representatives' attendance at meetings of truck stop or trucking industry trade associations, industry organizations, marketing groups, or networks.[151] According to Plaintiffs, this Court has already recognized the relevance of industry meetings and trade shows in an earlier order.[152] Further, the request is reasonable, Plaintiffs argue, because industry events provided an opportunity for members of The Conspiracy to communicate.[153] Plaintiffs point to the Hinderliter email's memorialization of such a communication at such an event.[154]

Pilot says it will consider responding to a more particularized request with specific meeting dates, organizations, and individual names.[155] Plaintiffs point out that they cannot be expected to have sufficient information about each meeting to be able to rewrite the request to Pilot's liking.[156] Pilot also contends that the request is extremely burdensome because it would require Pilot's accounting department to scour the expense reports and records for the thirteen

---

[151] Requests at 10-11.

[152] Supporting Memorandum at 28 (citing Memorandum Decision and Order Granting Motion to Compel at 9–11, docket no. 141, filed July 30, 2007).

[153] Supporting Memorandum at 28.

[154] Reply Memorandum at 29.

[155] Request Responses at 27–28; Opposing Memorandum at 41.

[156] Supporting Memorandum at 29.

individuals and filter out those that related to trade meetings.[157] However, Pilot does not offer any specific support for this claim of burden. As Plaintiffs point out, this might amount to a total of 65 reports per person per year, but with automated accounting systems and information retrieval, that burden could not be presumed to be unreasonable in light of the scheduling information and "calendar anchors" it would provide. Pilot should produce in response to this request.


No. 78

This request reads: "Produce all documents concerning communications or agreements with truck fleets that received or were offered a discount for 'locking out' or agreeing not to do business with Flying J or TCH."[158] Pilot says it will produce documents that "relate to communications stating reasons why individuals and companies should not do business with Flying J or TCH," but it believes it has already produced any such documents.[159]

This is another curious instance of a rephrasing without helpful clarification. Pilot contends that its rephrasing actually clarifies and expands the scope of the request because "locking out" is only one way of describing how someone might express a refusal to do business with Flying J or TCH.[160] Plaintiffs argue that the phrase "locking out" was copied from a Pilot document and that the rephrasing changes the focus of the request from communications or agreements with truck fleets that were offered a discount in exchange for agreeing not to do business with Flying J or TCH to communications (and not necessarily agreements) stating

---

[157] Opposing Memorandum at 41.

[158] Requests at 11.

[159] Request Responses at 28.

[160] Reply Memorandum at 55.

reasons for not doing business with Flying J or TCH. Plaintiffs correctly argue that documents showing that Pilot agreed to give a fleet a discount for locking out without stating the reasons for doing so could be excluded under Pilot's revision.[161]

To be sure that there is no misunderstanding, or exclusion (by inadvertence or design), Pilot should

> Produce all documents concerning communications stating reasons why individuals and companies should not do business with Flying J or TCH and communications or agreements with truck fleets that received or were offered a discount for "locking out" or agreeing not to do business with Flying J or TCH.

No. 82

Here Plaintiffs request that Pilot produce all documents "relied on, referred to, or evidencing the basis for" responding to Plaintiff's First and Second Sets of Interrogatories.[162] Pilot makes several objections to this request.  Pilot then states that it will produce non-privileged documents "relied on or referred to in responding" to the interrogatories, but believes it has already produced them.[163]

Plaintiffs object to the omission of the term "or evidencing the basis for" from Pilot's response. They argue that there is no basis for the omission.[164] But if Pilot is producing all documents *relied on or referred to in responding* to the interrogatories, then the omitted documents would be those which evidence the basis for a response, but which were not consulted in responding. Those documents would be cumulative and not regarded as important enough by

---

[161] Supporting Memorandum at 37–38.

[162] Requests at 12.

[163] Request Responses at 31.

[164] Supporting Memorandum at 39-40.

Pilot to consider. Pilot's omission of such documents which might evidence the basis for a response is not material.

It appears, however, that Pilot should be required to produce a privilege log if it withholds on the basis of privilege a document "relied on or referred to."


No. 83

Plaintiffs call for the production of all documents supporting or substantiating Pilot's denial (in Answer, Para. 41) that Plaintiffs have defined relevant antitrust markets.[165] Pilot objects that the request doesn't identify with reasonable particularity the documents it seeks. It also, according to Pilot, invades attorney-client and/or work product privileges.[166]

Plaintiffs argue that Pilot has no reason for withholding the information based on the particularity claim and that it should produce the documents subject to the August 2007 agreement that limits the production of documents relating to the allegations about relevant markets.[167] By the parties' own terms, the agreement does not apply to this request since it was served after the relevant time frame in the agreement.[168]

---

[165] Requests at 12.

[166] Request Responses at 32.

[167] Supporting Memorandum at 29–30 (citing Rule 16 Status Report Concerning Certain Discovery Issues, Section 7 at 7, docket no. 156, which reads:

> The parties do not need to produce documents relating to the allegations concerning relevant markets (Paragraphs 22–25, 41–47) at this time except for the following: i) communications prepared by, or provided to, members of senior management or the Board of Directors at Flying J, TCH, TAB, TONS, TA, and Pilot Travel concerning the following topics: competition among trucker fuel cards; fees charged to truck stops or truck fleets/drivers by trucker fuel card companies; and how truck stops compete; and ii) publications and customer pamphlets or brochures by Flying J, TCH, TAB, TONS, TA, and Pilot Travel since January 1, 2000 concerning the businesses they operate.

[168] Rule 16 Status Report Concerning Certain Discovery Issues at 2, docket no. 156.

If there are additional documents responsive to this request, Pilot should produce them or produce a privilege log if it asserts a privilege as to the documents. The request serves a functional purpose as calling for significant topical information that may not be requested specifically in other types of requests.

No. 84

This request asks for the production of all documents evidencing Pilot's non-transactional communications with entities that accept the Comdata card as payment in proprietary transactions.[169] Plaintiffs clarify that this "request is focused on Pilot's communications with any of its competitors – truck stops that accept Comdata proprietary transactions—a subject at the center of the antitrust claims in this case."[170]

In support of their motion, Plaintiffs argue that No. 84 almost exactly mirrors Pilot's request No. 8, to which the court ordered Plaintiffs to respond without any further clarification than the language in the request when it was presented.[171] It argues that Pilot "should not be allowed to propound a broadly worded request to Plaintiffs, obtain a Court order enforcing the request, and then turn around and insists on a 'more particularized Request' for itself."[172]

Pilot responds that even if it knew what information Plaintiffs seek, it does not know who accepts cards processed by Comdata so it cannot know whether it communicates with such an entity.[173] It further explains that it does not know how to interpret "the Comdata card" (is it the card on Comdata's website or all cards processed by Comdata?) nor does it know how to identify

---

[169] Supporting Memorandum at 19.

[170] *Id.*.

[171] *Id.*

[172] *Id* at 19–20.

[173] Opposing Memorandum at 26.

"entities that accept" it (would this include truck stops, gas stations, retail stores, restaurants?).[174] Pilot states that it has attempted to clarify the request, but Plaintiffs have not offered a clarification and demand a response to the request as it was written.[175]

Plaintiffs respond that Pilot's inability to understand the request is "ludicrous"[176] because Pilot knows proprietary transactions don't include those made with the "Comdata MasterCard used at ordinary gas stations, retail stores, restaurants and other non-truck stop merchants" [177] that "virtually every truck stop in the United States except Flying J accepts proprietary Comdata transactions."[178] Plaintiffs finally suggest the court could accomplish the same result with an order that Pilot produce all documents "evidencing Pilot's non-transactional communications with all U.S. truck stops except Flying J truck stops."[179]

The request is sufficiency clear and Pilot shall respond to Request No. 84 as written or as re-written above.


No. 85

Plaintiffs seek information about much of Pilot's other litigation.  "Produce a copy of each complaint, answer, or counterclaim, amended or otherwise, in all litigation to which you are or have been a party since 1996 except for: i) collection cases; ii) cases involving personal injuries or 'slip and fall' allegations; or iii) cases involving employment or labor disputes."[180]

---

[174] *Id.*

[175] *Id.* at 27.

[176] Reply Memorandum at 19.

[177] *Id.* at 20.

[178] *Id.* at 19.

[179] *Id.* at 20.

[180] Requests at 12–13.

Pilot's response includes objections to breadth, burden, redundancy, relevance, and ambiguity.[181] It says it will produce a copy of "each complaint, answer, or counterclaim, amended or otherwise, if any, in all litigation involving allegations of violation of *antitrust* laws to which either Pilot Travel or Pilot Corp. has been named a party."[182]

Plaintiffs argue that because the court compelled them to produce documents responsive to a request that was similarly unlimited, Pilot should have to respond to the instant response.[183] It argues that it is "law of the case that discovery about other lawsuits is a proper way to look for relevant information"[184] because Plaintiffs may be able to find out misconduct related to their antitrust and tort claims from this request.

Pilot concedes that the request is modeled on one of its own, but the request is quite different because Pilot sought information in order to determine whether TCH was seeking compensation from Pilot for damages TCH was seeking in other actions.[185] Plaintiffs' request is propounded for the possibility of uncovering misconduct, but has no actual basis, and is improper,[186] according to Pilot.

The rationale of investigation of duplication of claims is not applicable, so the fact that Plaintiffs had to respond to a similar request is not probative. But the potential for discovery of claims of wrongdoing related to the subject matter of this law suit, the burden on Plaintiffs to discover this information from other sources, and the focus of the inquiry by elimination of run-of-the-mill litigation, all weigh in favor of requiring Pilot to respond to this request as written.

---

[181] Request Responses at 33.

[182] *Id.* (emphasis added).

[183] Supporting Memorandum at 31-32.

[184] *Id.* at 32.

[185] Opposing Memorandum at 45.

[186] *Id.* at 45.

No. 86

This request calls for the production of "all documents evidencing communications regarding any allegation in the Complaint, or in your Answer to the Complaint (including without limitation all allegations relating to any of your defenses or affirmative defenses)."[187] Pilot objects that the request is duplicative of other requests and does not describe the documents sought with reasonable particularity. It also asserts that the request seeks documents immune from discovery under attorney-client, work product, joint defense, and common interest privileges and then incorporates its responses to all of Plaintiffs other requests.[188]

In support of their motion, Plaintiffs argue that they were compelled to respond to a similar request from Pilot, so Pilot should be required to respond to theirs.[189] In opposition, Pilot contends that the request does not meet Rule 34's requirement of a description of the documents sought with "reasonable particularity."[190] And since Plaintiffs know what the allegations are, if they seek documents on a particular subject other than those that have been responded to in the other requests, they can make a more particular request.[191]

Although this request covers a broad range of information (because all of the subjects mentioned in other requests are related to the allegations of the Complaint), it is not definitively duplicative. To the extent Pilot has not already provided information responsive to this request, it is directed to respond.

---

[187] Requests at 13.

[188] Request Responses at 33-34.

[189] Supporting Memorandum at 20–21.

[190] Opposing Memorandum at 27.

[191] *Id.* at 29.

## ORDER

For the reasons stated above, Plaintiffs' motion[192] is granted in part and denied in part. Pilot is ordered to respond to the relevant interrogatories and requests within thirty days of this order.

Dated this 2nd day of September, 2008.

BY THE COURT

_____

Magistrate Judge David Nuffer

---

[192] Second Motion to Compel Directed to Pilot Travel and Pilot Corporation with Respect to Plaintiffs' Second Set of Document Requests and Interrogatories, docket no. 310, filed Apr. 9, 2008.