IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| FLYING J INC., a Utah corporation, TCH LLC, a Utah limited liability company, TRANSPORTATION ALLIANCE BANK INC., a Utah corporation, and TON SERVICES INC., a Utah corporation,<br><br>Plaintiffs<br>v.<br>TA OPERATING CORPORATION, now known as TA OPERATING LLC, a Delaware limited liability company d/b/a TRAVELCENTERS OF AMERICA; TRAVELCENTERS OF AMERICA LLC; PILOT TRAVEL CENTERS LLC, a Delaware limited liability company; PILOT CORPORATION, a Tennessee corporation; and COMDATA NETWORK, INC. d/b/a COMDATA CORPORATION.<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO ENFORCE COURT ORDER [397]**<br><br>Case No. 1:06cv00030 TC<br><br>Judge Tena Campbell<br><br>Magistrate Judge David Nuffer |

Flying J moves[1] for enforcement of an order compelling discovery[2] (Order).  The Order was entered in July 2007 after extensive briefing on many issues.  This motion pertains to only one category of discovery compelled in the Order.

**Nature of Case**

Plaintiff Flying J Inc. is a Utah corporation that owns or operates approximately 170 truck stops throughout the United States and Canada.[3]  Plaintiff TCH is a Utah limited liability company owned in part by Flying J Inc.  It provides trucker fuel cards to trucking companies, their drivers, and independent owner-operators throughout the United States.  Plaintiff Transportation Alliance Bank is a Utah corporation wholly owned by Flying J Inc. that provides

---

[1] Plaintiffs' Motion to Enforce the Court's July 30, 2007 Order (dkt. 143) with Respect to Pilot Travel's Production of Truck Stop Diesel Fuel Method of Payment Data, as Amended by Subsequent Agreement of the Parties, docket no. 397, filed July 28, 2008.
[2] Memorandum Decision and Order Granting in Part Motion to Compel (Order), docket no. 143, filed July 30, 2007.
[3] First Amended Complaint ¶ 3, docket no. 351, filed May 21, 2008.

financial products and services.[4]  Plaintiff TON Services, a Utah corporation, is a wholly owned

subsidiary of Flying J Inc. that provides transportation-related services and products.[5]  All

Plaintiffs are referred to collectively as Flying J.

Defendant Pilot Travel Centers LLC is a Delaware limited liability company owned, in

part, by Defendant Pilot Corporation, a Tennessee corporation.  These two entities (collectively,

Pilot) own and operate over 280 truck stops/travel centers in the United States.[6]  Other

Defendants include a truck stop operator and Comdata Corporation, a fuel card issuer/financial

services provider.  TCH's trucker fuel card and all cards TCH processes compete with the

Comdata Corporation trucker fuel cards.[7]  Plaintiffs claim Defendants engaged in an unlawful

conspiracy to prevent the TCH Trucker Fuel Card from competing with Comdata's card and to

suppress competition in the market for trucker fuel cards.[8]

### Discovery at Issue

Flying J seeks information on the method of payment (MOP) Pilot's customers used to

pay for diesel fuel purchases.  Flying J says, "These data are vital to show the market share of

Comdata's fuel card, as well as the market share of competing fuel cards, at Pilot Truck Stops

during those years."[9]  "These Requests seek critical market definition and market share information

based on the use of trucker fuel cards at Pilot stops."[10]

The requests originally at issue read:

---

[4] *Id.* ¶ 5.
[5] *Id.* ¶ 6.
[6] *Id.* ¶ 9.
[7] *Id.* ¶ 4.
[8] *Id.* ¶ 1.
[9] Plaintiffs' Reply Memorandum in Support of Motion to Enforce the Court's July 30, 2007 Order (dkt. 143) with Respect to Pilot Travel's Production of Truck Stop Diesel Fuel Method of Payment Data as Amended by Subsequent Agreement of the Parties (Reply Memorandum on Motion to Enforce) at 1, docket no. 418, filed September 2, 2008.
[10] Plaintiffs' Memorandum in Support of Motion to Compel Production of Documents by Pilot Travel and Pilot Corporation (Plaintiffs' Memorandum in Support of Motion to Compel) at 11, docket no. 109, filed April 6, 2007.

**REQUEST NO. 17:**
Produce all financial documents sufficient to disclose, on an annual basis, the percent of diesel fuel sales at Pilot corporate-owned and franchisee-owned truckstops purchased by each method of payment during the relevant time period (e.g., 60% Comdata, 10% EFS, 10% cash, etc.).

**REQUEST NO. 35:**
Produce documents sufficient to identify all methods of payment accepted by Pilot company-owned or Franchisee-owned truckstops for the purchase of diesel fuel on a monthly basis since July 1, 1996, including documents sufficient to identify the aggregate diesel fuel purchases made in dollars, and the percent of diesel fuel sales, made with each method of payment on an annual basis since July 1,1996 (e.g., June 2006: Comdata $288 million/60%; EFS $48 million/l0%; Cash $24 million/5%, etc.).[11]

As characterized by Flying J in its initial motion to compel:

Requests 17 and 35, respectively, seek financial documents sufficient to disclose the percent of diesel fuel sales at Pilot truck stops purchased by each method of payment, and documents sufficient to identify all methods of payment accepted by Pilot truck stops for the purchase of diesel fuel, including documents sufficient to identify the aggregate diesel fuel purchases made in dollars, and the percent of diesel fuel sales, made with each method of payment.[12]

Pilot objected to these requests on several grounds including that they require Pilot "to create documents outside of the ordinary course of their business practices," and because they allegedly attempted to disguise interrogatories as requests for production.[13]

## Order Compelling Discovery

Besides compelling discovery not relevant here, the Order required that Pilot produce "already-existing data, whether in raw or synthesized form, responsive to Requests 17 and 35."[14] This was based on Flying J's argument that it was only asking Pilot "to produce already existing

---

[11] Plaintiffs' Memorandum in Support of Motion to Compel at 4, 5. Copies of Plaintiffs' requests and Pilot's responses are attached to the Plaintiffs' Memorandum in Support of Motion to Compel as Exhibits A and B, respectively.
[12] *Id.* at 11.
[13] See Pilot's Responses at 18-19, 30 attached as Exhibit B to Plaintiffs' Memorandum in Support of Motion to Compel.
[14] Order at 10.

data (whether or not these data happen to be stored in electronic form) responsive to these Requests."[15]  The Order required production of data from July 1, 1996.[16]

### Modification of Order

On August 17, 2007, the Parties filed a "Rule 16 Status Report" [17] in which they stipulated to certain discovery obligations implementing discovery orders from the Court.  "In that stipulation, the Parties agreed (with some exceptions) to limit discovery to the period since January 1, 2000."[18]  This was a modification of the Order.  With regard to MOP Data, the Parties agreed to produce:

> D. Information sufficient to disclose on an annual basis for Flying J, TA, and Pilot Travel the total number of transactions, frequency of use, and total sales in dollars for sales of diesel fuel using each method of payment accepted at Flying J, TA, and Pilot truck stops in the United States.[19]

At a later time, "Plaintiffs' counsel learned that Flying J could produce such MOP Data only for the period starting January 1, 2002."[20]  Then, Flying J pursued a further modification of the time frame for production.

> Plaintiffs' counsel (Michael Crimmins) then telephoned both counsel for TA, Todd Shaughnessy, and counsel for Pilot, John Bogart (in separate calls in early November 2007) to inform them that Plaintiffs could produce MOP Data starting in 2002, and that because the Parties had agreed to a "reciprocal production" of like data, Plaintiffs would therefore not seek MOP Data from Defendants for any longer period. It was Plaintiffs' counsel's understanding during these calls that all Parties agreed to produce MOP Data for only the period January 1, 2002 through

---

[15] **Error! Main Document Only.** Plaintiffs' Reply in Support of Motion to Compel Production of Documents by Pilot Travel and Pilot Corporation at 10, docket no. 113, filed May 3, 2007.

[16] Plaintiffs' Memorandum in Support of Motion to Enforce the Court's July 30, 2007 Order (dkt. 143) with Respect to Pilot Travel's Production of Truck Stop Diesel Fuel Method of Payment Data, as Amended by Subsequent Agreement of the Parties (Memorandum in Support of Motion to Enforce) at second page (unnumbered), docket no. 398, filed July 28, 2008.

[17] Rule 16 Status Report Concerning Certain Discovery Issues (Rule 16 Status Report) at 2-4, docket no. 156, filed August 17, 2007.

[18] Memorandum in Support of Motion to Enforce at 2

[19] Rule 16 Status Report at 5.

[20] Memorandum in Support of Motion to Enforce at 4.

October 30, 2007, a period *shorter* than that covered by the Court's Order and that covered by the Parties' prior agreement.[21]

Flying J's counsel thereafter sent many letters on the issue of production *format* which included references to the time frames Flying J assumed were applicable.[22]  "However, on April 11, 2008 Pilot produced MOP Data for only 2005-2007," stating that earlier data are "'not reasonably accessible' and would be 'expensive' to produce."[23]

Flying J immediately wrote for an explanation of what it believed was Pilot's very late assertion of an accessibility objection and Pilot responded that it believed the parties' agreement was to produce what is reasonably accessible.[24]  Accessibility was not raised at all in the earlier briefing on the motion to compel;[25] the issue was whether Pilot could be required to extract data for production.  Pilot then said "Rule 34. . . does not authorize one party to force another party to 'extract' data and create documents."[26]

### Arguments on this Motion

Flying J moved to enforce the Order.  Pilot's initial response to this motion was an argument of inaccessibility.  Pilot believes Flying J has known all along what was available to Pilot.  Before the July 30, 2007, order, "on May 4, 2007, as part of its voluntary disclosures concerning ESI systems, Pilot Travel provided Plaintiffs with a description of Pilot Travel's ESI systems."[27]

---

[21] *Id.* at 4.

[22] *Id.* at 4-5, 8.

[23] *Id.* at 6 (quoting letter from John H. Bogart to T. Michael Crimmins (April 11, 2008) attached as Exhibit O to Memorandum in Support of Motion to Enforce).

[24] Memorandum in Support of Motion to Enforce at 6.

[25] Order at 10.

[26] **Error! Main Document Only.**Memorandum of Pilot Travel and Pilot Corporation in Opposition to Plaintiffs' Motion to Compel the Production of Documents at 9, docket no. 111, filed April 24, 2007.

[27] Memorandum in Opposition to Plaintiff's Motion to Compel Production of Data Which Does Not Exist (Memorandum in Opposition to Motion to Enforce) at 4, docket no. 409, filed August 20, 2008 (quoting letter from C. Stormont to J. Toth and T. Shaughnessy (May 4, 2007), attached to as Exhibit C Memorandum in Opposition to Motion to Enforce).

> In its May 4, 2007 disclosure, Pilot Travel expressly noted the limits of
> information concerning transactional data. Pilot Travel maintains "database
> backup tapes for thirteen (13) months . . . . After being served with the Complaint
> in this matter, Pilot Travel and Pilot Corp. ceased recycling backup tapes and
> have maintained all of their backup tapes dating back to April 2005."[28]

Pilot says that this disclosure accurately described " the limits of its data [and] there was no

reason to think that Plaintiffs were not already aware that Pilot Travel would not produce

information reaching back any further than 2005."[29]  Pilot says it would be unfair to require it to

load backup tapes while Flying J has only used live data for its production of method of payment

information and that the *use of "live" data* makes the parties' productions symmetrical even

though they cover different time periods.[30]  Flying J says, however, that only identical *time

frames* will result in reciprocal productions.[31]

    Supporting its factual claims about inaccessibility, Pilot produced a one page Declaration

of Joushua D. Birdwell.[32]  There was significant argument, however, about the meaning of

Birdwell's short declaration.[33]

## Post Briefing Discovery and Memoranda

    The court then ordered more investigation into Pilot's data systems and what was

reasonably available.[34]  The court first ordered Pilot to "provide a detailed report from Josh

Birdwell (and such other representatives of Pilot as shall be necessary) to fully explain the data

systems in use by Pilot Defendants" for the relevant time period and then "that the Pilot

Defendants shall make Birdwell (and any other persons participating in the report) available for

---

[28] Memorandum in Opposition to Motion to Enforce at 3.
[29] *Id.* at 5.
[30] *Id.* at 6-7, 10.
[31] Reply Memorandum on Motion to Enforce at 12-13.
[32] Exhibit A to Memorandum in Opposition to Motion to Enforce.
[33] Reply Memorandum on Motion to Enforce at 6-7.
[34] Docket Text Order, docket no. 427, filed September 10, 2008.

30(b)(6) deposition by Plaintiffs on this issue."[35]  Finally the court ordered "that Pilot

Defendants and Plaintiff shall [thereafter] file supplemental memoranda . . . ."[36]

The report on the Pilot Travel POS Data Systems was provided September 19, 2008.[37]  It

described two levels to the Pilot data collection systems – retail store level data management and

enterprise level data management.  After September 1, 2005, the enterprise level system had the

ability "to correlate sales totals for particular goods or services with particular methods of

payment."[38]  That is the sort of information Flying J sought in its discovery, and it has been

provided.  Flying J, however, objects to the time frame.

Birdwell was deposed the entire morning of October 1, 2008.[39]  Mr. Birdwell flatly

testified that it is not possible to gather MOP data for diesel fuel for the time period prior to

September 2005.[40]  Pilot summarized its systems in its supplemental memorandum filed October

15, 2008:

> Prior to installing ReMa [a newer system of data management], Pilot Travel
> Centers LLC ("Pilot Travel") did not collect (let alone retain) the method of
> payment information at issue in this motion.  Such information may have existed
> for a short period at the store level, but it was never transmitted to the main office
> and was not retained at the store level.  This information does not exist for the
> period prior to September 2005.[41]

---

[35] *Id.*
[36] *Id.*
[37] Pilot Travel POS Data Systems (Report), Exhibit 4 to [Pilot's] Supplemental Memorandum in Support of Opposition to Motion to Compel Production of Non-Existent Information (Pilot's Supplemental Memorandum), docket no. 449, filed October 15, 2008; Exhibit A to Plaintiffs Supplemental Memorandum in Support of Motion to Enforce the Court's July 30, 2007 Order with Respect To Pilot Travel's Production of Truck Stop Diesel Fuel Method of Payment Data (Plaintiffs' Supplemental Memorandum), docket no. 450, filed October 15, 2008.
[38] Report at 5.
[39] 30(b)(6) Deposition of Corporate Representative(s) of Pilot Travel Centers LLS – Designated Rep. Joshua David Birdwell (Birdwell Deposition), taken October 1, 2008, attached as Exhibit B to Plaintiffs' Supplemental Memorandum.
[40] Birdwell Deposition 81:19-20.  See contextual discussion set out in Pilot's Supplemental Memorandum at 4-6.
[41] Pilot's Supplemental Memorandum at 2.

This statement reflects the refocus of Pilot's arguments from *inaccessibility* – and restoration of backup tapes or restriction to use of "live" data – to actual *unavailability*. This is presumably a result of the focus on the data systems by the report and deposition.

Flying J has suggested alternative means of gathering or reporting data it believes would be helpful.[42] Flying J claims "Mr. Birdwell testified at his deposition that Pilot *could* present MOP data in a format showing the total dollars for 'commercial transactions' (diesel related) corresponding to each method of payment for 2002-2005."[43] However, the court does not find support for this statement in the cited segments of Mr. Birdwell's deposition. What is more important, *this is not the information called for in the original discovery requests*. Flying J has moved to asking for method of payment for purchases "related" to diesel fuel, not just diesel fuel.

Another reformulation by Flying J is its proposal that "Pilot produce some form of MOP data that shows the percentage of purchases with each type of fuel card used at Pilot truck stops during those years: either the dollar volume or the number of transactions for each trucker fuel card."[44] Again, this is not what was sought in the original requests nor is it what was required by the Order.[45]

---

[42] Reply Memorandum on Motion to Enforce at 18
[43] Birdwell Deposition 117:21-123:5. See contextual discussion set out in Plaintiff's Supplemental Memorandum at 16-17.
[44] Reply Memorandum on Motion to Enforce at 5.
[45] Pilot's Supplemental Memorandum at 8.

## ORDER

Because the data contemplated by the order is only reasonably available for the period

from September 2005 forward, and this data has been produced, the motion[46] is DENIED.

Dated this 30th day of December 2008.

BY THE COURT:

David Nuffer
United States Magistrate Judge

---

[46] Plaintiffs' Motion to Enforce the Court's July 30, 2007 Order (dkt. 143) with Respect to Pilot Travel's Production of Truck Stop Diesel Fuel Method of Payment Data, as Amended by Subsequent Agreement of the Parties, docket no. 397, filed July 28, 2007.